NEW YORK STATE ASSOCIATION FOR RETARDED CHILDREN, INC., et al., and Patricia Parisi et al., Plaintiffs,

v.

Hugh L. CAREY, Individually and as Governor of the State of New York, et al., Defendants,

United States of America, Amicus Curiae.

Thomas A. COUGHLIN, III, Individually and as Deputy Commissioner of the New York State Department of Mental Hygiene, Petitioner,

v.

The CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., and Ronnie A. Smith, appearing on behalf of himself and others similarly situated, Respondents.

Nos. 72–C–356, 72–C–357.

United States District Court, E. D. New York.

Sept. 20, 1977.

Christopher A. Hansen, Mental Health Law Project, New York City, Kalman E. Finkel, Legal Aid Society, Civil Appeals & Law Reform Unit, New York City, Carol B. Kellermann, Legal Aid Society, Civil Appeals & Law Reform Unit, New York City, of counsel; Jack Bernstein, George Heymann, System of Advocacy for the Retarded, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; Robert S. Hammer, Asst. Atty. Gen., New York City, of counsel.

Roemer & Featherstonhaugh, Albany, N. Y., for respondents; Pauline F. Rogers, James D. Featherstonhaugh, Albany, N. Y., of counsel.

William A. Carnahan, Paul F. Stavis, Margaret M. Corcoran, Paul Litwak, Albany, N. Y., for New York State Dept. of Mental Hygiene.

Jackson, Lewis, Schnitzler & Krupman, New York City, for United Cerebral Palsy; Anthony H. Atlas, New York City, of counsel.

BARTELS, District Judge.

Motion by Thomas A. Coughlin, as Deputy Commissioner of defendant New York State Department of Mental Hygiene ("the Department"), to join the Civil Service Employees Association, Inc. and a representative union officer (hereinafter collectively referred to as "the union") to this action [1] for the limited purpose of determining whether a proposed contract between the Department and United Cerebral Palsy ("UCP") would infringe on any rights of the employees at Willowbrook; for a preliminary injunction against the union's prosecution of a related action in state court; and to consolidate the application for a preliminary injunction with a trial on the merits of the claim. Motion partially granted as set forth in the Order of this court of September 7, 1977, and as supported by this opinion.

On March 10, 1977, in partial settlement of a contempt motion brought by plaintiffs against defendants Kolb, Coughlin and Mesnikoff, all of the present parties to this action agreed to a Stipulation and Order on Consent which was signed by the court. In the Stipulation, the defendants admitted "that there is non-compliance with portions of the Consent Judgment and agree that there is need for a substantial increase and redirection of efforts to achieve compliance with the Consent Judgment . . . ." To this end, paragraph 3 of the Stipulation required the defendants to seek a contract for the operation by UCP of five (later increased to seven) buildings at Willowbrook Developmental Center, and at the same time stated that there was no intention to abrogate rights of state employees under existing collective bargaining agreements. Paragraph 28 required the defendants to take all action within their lawful authority, including the state constitution and state laws and any necessary legislative approval, in order to execute and implement this Stipulation.

Negotiations between the Department and the UCP were proceeding to a conclusion when, on May 11, 1977, the union, which represents state employees at Willowbrook, obtained a temporary restraining order in Supreme Court, Albany County, against certain named officials of the Department enjoining further negotiations on the ground that the operation of these Willowbrook facilities by UCP would violate state civil service and mental hygiene laws with the effect of illegally eliminating civil service positions presently filled by union members. The Department removed the

---

1. This action was brought on behalf of mentally retarded residents of Willowbrook Developmental Center in order to enforce their constitutional rights to protection from harm while in the care of the state. For further background, see *New York Ass'n for Retarded Children, Inc.* *v. Carey*, 409 F.Supp. 606 (E.D.N.Y.1976); *New York Ass'n for Retarded Children, Inc. v. Carey*, 393 F.Supp. 715 (E.D.N.Y.1975); *New York Ass'n for Retarded Children, Inc. v. Rockefeller*, 357 F.Supp. 752 (E.D.N.Y.1973).

action to the United States District Court for the Northern District of New York and sought its transfer to this court but Chief Judge Foley held that there was no federal jurisdiction in his court over the claim and remanded it to the state court. On remand, the state court entered an order denying a preliminary injunction on the ground that the union would not suffer irreparable harm during the pendency of the action.

■ The Department, through Deputy Commissioner Coughlin, also a defendant in this action, thereupon commenced the instant proceeding in this court by an order directed to the union to show cause why it should not be joined for the limited purpose of litigating its rights under its employment contract with the state and under state law and for injunctive and declaratory relief.[2]

### Limited Joinder of the Union

■ The union expressly rejected an invitation to intervene in this action and accordingly objects to being joined, preferring to litigate the issues raised in the state court. Nonetheless, we hold that under the circumstances the union should be joined as a party under Fed.R.Civ.P. 19(a). The union claims certain state law rights which are clearly related to the subject matter of this action and we believe that as a practical matter the ability of both the union and the Department to protect their respective interests in this court would be impaired by the union's absence. *See, e. g., Lynch v. Sperry Rand Corp.,* 62 F.R.D. 78 (S.D.N.Y. 1973); *Morris v. Steele,* 253 F.Supp. 769 (D.Mass.1966). Moreover, in view of the potential conflict between the UCP contract and the union's alleged rights, complete relief to the plaintiffs and defendants in this action may not be possible under the March 10, 1977, Stipulation in the absence of the union. In addition, as contended by the Department, the state may be subject to substantial risk of double liability should the Department conclude a contract with

the UCP and thereafter discover it had no authority to do so.

■ The union raises a technical objection that it is being joined to an already terminated subsidiary contempt action and not to the main action, asserting that the Stipulation is only the result of the contempt proceeding instituted against certain of the defendants. The Stipulation was signed pursuant to an order of the court for the purpose of carrying out the Consent Judgment and to protect plaintiffs' § 1983 rights. Consequently the Stipulation is part of the judgment in the principal action over which this court has continuing jurisdiction to the same degree as any other portion of the Consent Judgment. *See United States v. A.S.C.A.P.,* 442 F.2d 601 (2d Cir. 1971). Further, the union objects to joinder on the ground that there is no provision in the federal rules for "limited joinder," and asserts that if it is to be drawn into this action, it must be able to litigate the issues which the present parties have long since settled in the Consent Judgment and later orders. This, of course, would make no sense. Rule 21 permits the court to add parties "at any stage of the action and on such terms as are just." There is no reason to allow the union to litigate that which has already been adjudicated or anything more than it is presently litigating in the state court action. Finally, contrary to the union's claim, limited joinder will not deprive the union of due process since its sole purpose is to determine what union rights, if any, would be affected by the proposed UCP contract. If it is determined that the union has any rights which would be violated by the UCP contract, it will then be necessary for the court to fashion a proper remedy.

### Subject Matter Jurisdiction

The union challenges this court's subject matter jurisdiction to entertain the Department's claims against the union. From the

2. Although service of an order to show cause is sufficient to bring the union in as a party defendant, *see United States v. A.S.C.A.P.,* 442 F.2d 601 (2d Cir. 1971), we have required the Department to serve the union with a summons and cross-complaint setting forth its claims in an orderly fashion.

Department's application, it appears that the Department seeks a declaratory judgment that the proposed UCP contract (i) does not violate the civil service provisions of Art. 5, § 6 of the New York Constitution (McKinney's 1969); (ii) does not constitute a discontinuance of the Willowbrook Developmental Center in violation of New York Mental Hygiene L. §§ 7.13 & 7.15 (McKinney's 1976); and (iii) does not constitute a contracting of goods and services in violation of the rights of permanent employees under Art. 22.1 of the state's collective bargaining agreement with the union.

We discuss item (iii) at the outset because the collective bargaining agreement expires on March 31, 1979, and there is no showing that any permanent employees will be laid off at Willowbrook by that date by reason of the UCP contract. Since the union has not joined the Department in raising this contractual issue in the state court, the question whether an actual case or controversy exists in this respect must await the hearing on the merits.

Turning to the claims under the state constitution and mental hygiene law, the Department claims that this court has federal question jurisdiction on the ground that if the union has any employment rights which the UCP contract would infringe, such rights would have to be balanced against plaintiffs' federal constitutional rights to the relief provided by the UCP contract, and it further claims that this court has ancillary jurisdiction over the proceeding.

1. *Federal Question Jurisdiction*

■ There is a serious question whether the Department, as a defendant in this action, is in a position to assert federal question jurisdiction predicated upon the claim that the plaintiffs may have constitutional rights which override the state laws relied on by the union. If there is an assertion that the state laws are unconstitutional as applied to the facts of this case, plaintiffs are in a far better position to raise this federal question. *See Tileston v. Ullman,* 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). For this reason we believe it is doubtful whether we can rest our jurisdiction on defendant's theory. Nor is there federal question jurisdiction simply because a federal court order requires the Department to do something which the union, until now not a party to the action, asserts would be in violation of state law. A question arising under a federal court order does not arise under "the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *Prairie Band of Pottawatomie Tribe of Indians v. Puckkee,* 321 F.2d 767 (10th Cir. 1963). *See also Oklahoma ex rel. Wilson v. Blankenship,* 447 F.2d 687 (10th Cir.), *cert. denied,* 405 U.S. 918, 92 S.Ct. 942, 30 L.Ed.2d 787 (1971).

2. *Ancillary Jurisdiction Over Necessary Parties*

■ There is, however, ancillary jurisdiction over the Department's claims against the union.[3] It has long been settled that in diversity cases, once a federal court has jurisdiction over an action, that jurisdiction is not "defeated by the intervention . . . of a party whose presence is not essential to a decision of the controversy between the original parties." *Wichita R. & Light Co. v. Public Utilities Comm'n,* 260 U.S. 48, 54, 43 S.Ct. 51, 53, 67 L.Ed. 124 (1922). *Accord, Phelps v. Oaks,* 117 U.S. 236, 6 S.Ct. 714, 29 L.Ed. 888 (1886); *Formulabs, Inc. v. Hartley Pen Co.,* 318 F.2d 485 (9th Cir.), *cert. denied,* 375 U.S. 945, 84 S.Ct. 352, 11 L.Ed.2d 275 (1963); *Northeast Clackamas County Electric Cooperative, Inc. v. Continental Casualty Co.,* 221 F.2d 329 (9th Cir. 1955); *Virginia Elec. & Power Co. v. Carolina Peanut Co.,* 186 F.2d 816 (4th Cir. 1951); *Kentucky Natural Gas Corp. v. Duggins,* 165 F.2d 1011 (6th Cir. 1948); *Division 525, Order of Ry. Conductors of America v. Gorman,* 133 F.2d 273 (8th Cir. 1943). According to Moore's Fed-

---

3. For a discussion of the distinction between ancillary jurisdiction, pendent jurisdiction and pendent party jurisdiction, *see, e. g.,* Note, *The Extension of Pendent Jurisdiction to Parties not in the Jurisdiction-Conferring Suit,* 20 Loyola L.Rev. 176 (1976).

eral Practice, "[i]ntervention under an absolute right . . . need not be supported by grounds of jurisdiction independent of those supporting the original action, at least unless the party seeking to intervene is an indispensable party." 3B J. Moore's Federal Practice ¶ 24.18[3], at 24–277 (2d ed. 1977), and at 235 (Supp.1976–77). In addition, although Professor Moore indicates that the same rules of ancillary jurisdiction apply regardless of whether the basis of the original action is diversity or federal question, 3B Moore's Fed.Prac. ¶ 24.18[4] (2d ed. 1977), we believe that a more compelling case for the exercise of ancillary jurisdiction arises in actions such as this where jurisdiction is based on a federal question. *Cf. Almenares v. Wyman,* 453 F.2d 1075 (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); *Leather's Best, Inc. v. S. S. Mormaclynx,* 451 F.2d 800 (2d Cir. 1971); *Astor-Honor, Inc. v. Grosset & Dunlap, Inc.,* 441 F.2d 627 (2d Cir. 1971) (finding pendent party jurisdiction).

■■■ The only difference between intervention of right under Rule 24(a)(2) and joinder under Rule 19(a)(2)(i) is which party initiates the addition of a new party to the case. Since the general rule is that parties cannot confer subject matter jurisdiction on the federal courts by consent or by conduct, C. Wright, Law of Federal Courts § 7, at 17 (3d ed. 1976), it should make no difference as far as ancillary jurisdiction is concerned whether the new party was involuntarily joined or applied to intervene. *See* Fraser, *Ancillary Jurisdiction of Federal Courts of Persons Whose Interest May be Impaired if not Joined,* 62 F.R.D. 483, 486–87 (1974). The discussion of ancillary jurisdiction in *Wichita R. & Light Co., supra,* and in the other authorities cited above, reveals that the key factor in determining ancillary jurisdiction over a new party is not whether it intervened or joined, but whether it is a necessary or an indispensable party.[4] Accordingly ancillary jurisdiction was exercised over a defendant joined as a necessary party in *Ford v. United Gas Corp.,* 254 F.2d 817 (5th Cir.), *cert. denied,* 358 U.S. 824, 79 S.Ct. 40, 3 L.Ed.2d 64 (1958), and in *Jacobs v. United States,* 367 F.Supp. 1275 (D.Ariz. 1973). The court in *City of Orangeburg v. Southern Ry. Co.,* 134 F.2d 890, 894 (4th Cir. 1943), stated the rule as follows: "It has been held that jurisdiction is not lost by . . . intervention or joinder [which destroys complete diversity] if the new parties are not indispensable but merely conditionally necessary parties to the suit . . .." *See* 7 C. Wright & A. Miller, Federal Practice & Procedure § 1610, at 94 (1972).[5]

As appears above, the union clearly falls into the category of necessary parties. *See* 3A Moore's Fed.Prac. ¶ 19.07[1]. The joinder of the union is not indispensable to the grant of relief to plaintiffs in this case, since the defendants can be ordered to provide whatever is necessary to protect the plaintiffs' constitutional rights regardless of any conflicts of state law with such rights. If for some reason the union could not be brought in to litigate this question, the court and the parties could and would take any necessary alternative action in or-

---

4. There is no ancillary jurisdiction over an indispensable party because an indispensable party should have been a party from the beginning. If the court would have had no jurisdiction over the indispensable party at the commencement of the suit, the jurisdictional requirements cannot be avoided by adding him later in the proceeding.

5. We do not believe that the majority's refusal in *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), to discuss the application of ancillary jurisdiction to the claims of class members with less than $10,000 in controversy who were represented by plaintiffs with the requisite jurisdictional amount, can be read as a repudiation of these principles.

*Cf. Bersch v. Drexel Firestone, Inc.,* 519 F.2d 974 (2d Cir. 1975), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1976). Instead, we read *Zahn* as simply presaging the court's decision in *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), that pendent or ancillary jurisdiction could not be exercised over parties which Congress explicitly intended to exclude from the federal courts by requiring a certain sum in controversy. There is no indication that Congress intended that incorporated unions and representative union officials should not be added to § 1983 actions under ancillary jurisdiction. *See Borreca v. Fasi,* 369 F.Supp. 906 (D. Hawaii 1974) (corporation a "person" under § 1983).

der to guarantee to the plaintiffs their rights.

### 3. Court's Ancillary Jurisdiction to Enforce Its Judgment

■ There is an alternative ground for the exercise of ancillary jurisdiction over this proceeding, based on the principle that the federal courts have power to take such action as is necessary properly to carry out or enforce their judgments on matters as to which they have original jurisdiction. *See* 13 Wright & Miller, *Fed.Prac. & Proc.* § 3523, at 60; *Dugas v. American Surety Co. of N. Y.,* 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720 (1937); *Supreme Tribe of Ben Hur v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921); *Crosby v. Mills,* 413 F.2d 1273 (10th Cir. 1969). While these cases involved relitigation by the parties or their successors to the original judgment, a number of cases have held that ancillary jurisdiction to take acts to effectuate a prior judgment exists over new parties who are interfering with the decree. In *Board of Ed. v. York,* 429 F.2d 66 (10th Cir.), *cert. denied,* 401 U.S. 954, 91 S.Ct. 968, 28 L.Ed.2d 237 (1970), the Board of Education, which was ordered to change school boundaries in a desegregation case, was able to enjoin a couple from trying to send their child to school across the new boundaries. In *Castro v. Beecher,* 386 F.Supp. 1281 (D.Mass.1975), the court exercised ancillary jurisdiction over new defendants in an action by the plaintiffs in the underlying case to enforce the judgment rendered therein. The court in *Mississippi Valley Barge Line Co. v. United States,* 273 F.Supp. 1, 6 (E.D. Mo.1967), *aff'd,* 389 U.S. 579, 88 S.Ct. 692, 19 L.Ed.2d 779 (1968), stated that the rule whereby the courts of the United States have the power "to enter such orders as may be necessary to enforce and effectuate their lawful orders and judgments, and to prevent them from being thwarted and interfered with . . . applies whether or not the person charged with the violation of the judgment or decree was originally a party defendant to the action."

The unusual circumstances of this case render it particularly appropriate for the application of jurisdiction ancillary to the Consent Judgment. All parties recognize that the state has a constitutional obligation to provide minimum care for the mentally retarded Willowbrook class members and to protect them from harm. In this § 1983 action to enforce that obligation it has been found most effective to tailor the relief ordered to those services which the Department of Mental Hygiene is authorized under New York law to provide, seeking, when necessary, legislative approval for modifications of the Department's authority. The decrees of this court have thus been carried out in an orderly fashion, consistent with the principles of comity and minimum interference which govern the relations between federal and state organisms.

Not until now, five years after the suit was instituted, has a serious question been raised over exactly what the authority of the Department is in this sensitive area. It is essential to the resolution of the case and controversy which exists between the plaintiffs and defendants that when such questions cannot be avoided they be decided by the court. Effectuation of the decrees necessary for the protection of the mentally retarded plaintiffs cannot depend on piecemeal litigation in the state courts of such issues.[6] Fundamental fairness not only to the Department, which is caught in the middle, but also to the union, which is the only party to object to the UCP contract, requires that the union be brought into this ancillary proceeding to litigate the issues raised. This the court has jurisdiction to do.

We recognize that by taking jurisdiction of these claims we will be faced with difficult and important questions of state law which standing alone normally would be

---

**6.** According to 13 C. Wright & A. Miller, *Federal Practice & Procedure* § 3523, at 58 (1975), the concept of ancillary jurisdiction "is a common-sense solution to the problems of piece-meal litigation that otherwise would arise by virtue of the limited jurisdiction of the federal courts prescribed in Article III and the complexity of many modern lawsuits."

more properly decided by the state Supreme Court already faced with them. *See* 1A Part 2 Moore's Fed.Prac. ¶ 0.203[4], at 2136 (2d ed. 1977); *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, the urgency of this case, involving the rights and lives of thousands of mentally retarded persons unable to care for themselves, dependent on—and often at the mercy of—the quality of the persons who care for them, compels this court to decide the issue forthwith. This court has always treated matters concerning the Willowbrook Consent Judgment with dispatch, and the state court, which is not as familiar with the underlying issues of the case, may not be subject to the same urgency to render an immediate judgment as we are.

### *Injunction Against State Court Proceedings*

The Department of Mental Hygiene has requested an injunction against the state court proceedings. While this court may have power to issue an injunction under the Anti-Injunction Act, 28 U.S.C. § 2283, *see Atlantic Coast Line R. Co. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *United States v. A.S.C.A.P., supra; Doe v. Ceci,* 517 F.2d 1203 (7th Cir. 1975), a showing of irreparable harm to the plaintiffs or the Department is necessary before a federal court can grant this equitable relief. *Speight v. Slaton,* 415 U.S. 333, 94 S.Ct. 1098, 39 L.Ed.2d 367 (1974). No such showing was made. The union, by the continuance of the state court action, cannot be accused of directly infringing plaintiffs' civil rights, even if the Department were the proper party to assert them. The plaintiffs and the Department are primarily interested in an immediate declaration of the authority of the Department to contract with the UCP, and such a declaration can be made by the state court as well as by this court. However, in passing, it would appear that the convenience of all parties would be better served were such a decision to emanate from this court as administrator of the Willowbrook Consent Judgment.

SO ORDERED.