William David CURTIS, Plaintiff,

v.

UNITED TRANSPORTATION
UNION, Defendant.

No. B–76–C–27.

United States District Court,
E. D. Arkansas, N. D.

Sept. 6, 1979.

Memorandum Opinion March 3, 1980.

nous intracranial malformation, even though Curtis submitted doctors' statements that he was fit to return to his work as a brakeman.

Originally joined as a defendant was Public Law Board No. 717. However, that action was dismissed for failure to state a claim by Order of the Court entered May 22, 1978. Plaintiff moved, pursuant to Rule 41, that Frisco be dismissed, which motion was granted, also on May 22, 1978.

 The trial to the Court began Monday, February 12, 1979. At the conclusion of the trial, findings of fact and conclusions of law were stated from the bench, all of which are re-affirmed here. In sum, the Court found that the union had not been guilty of bad faith and that the UTU's General Chairman, who represented Mr. Curtis before the Public Law Board, did so to the best of his ability. The Court, however, found grave deficiencies in the manner in which the neutral doctor was selected and in the mode of decision employed by the neutral member of the Board, i. e. automatic acceptance of the neutral doctor's opinion in every medical case. Further, the Court found that in view of the complex and technical nature of Mr. Curtis' claim, the defendant was actually incompetent to, and consequently did not, fairly represent him before the Board, even though he had represented Curtis in the same manner as he usually represented other UTU members in the ordinary, typically simple, cases he processed. The Court concluded that such blind adherence to customary procedures in a case where such procedures are clearly inadequate may constitute "perfunctory representation" sufficient to breach the union's duty of fair representation. When, as here, a case is not routine but requires, by its nature, expert representation of the worker in order to adequately present his claim, the union must provide such expert representation if it is not to be held guilty of unfair representation. It is the Court's view that simply going through motions which are meaningless, in the context of the true issues in the case, constitutes "perfunctory" representation. The actions and deci-

H. David Blair, Batesville, Ark., Joe C. Boone, Jonesboro, Ark., for plaintiff.

Thomas A. Woodall, Rives, Peterson, Pettus, Conway, Elliott & Small, Birmingham, Ala., for defendant.

J. C. Deacon; Barrett, Wheatly, Smith & Deacon, Jonesboro, Ark., for defendant railroad.

## MEMORANDUM

EISELE, Chief Judge.

William David Curtis sued his union for breach of the duty of fair representation in a hearing before Public Law Board No. 717, pursuant to the procedures of the Railway Labor Act, 45 U.S.C. § 153. The award, entered on October 31, 1975, upheld the refusal of the St. Louis-San Francisco Railway Company (Frisco) to reinstate him after he had surgery to correct an arterio-ve-

sions of the defendant must be meaningful and must be organized by the degree of professional competency dictated by the nature of the case. Perfunctory representation constitutes a breach of the duty of fair representation. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Clearly, the facts in this case reveal a technically complex claim that the General Chairman presented, without insight, like the run of the mill cases he was used to handling and which was as a consequence, incompetently and perfunctorily presented, not from any lack of zeal or good will, but rather from a lack of the requisite knowledge and skills.

At the conclusion of the trial the Court directed the parties to brief the issue of damages, and it is that question which is of primary concern now.

█ Briefly stated, it is the plaintiff's theory that the Public Law Board decision is vested with finality, save for very narrow grounds for review set out in 45 U.S.C. § 153 First (q), none of which the plaintiff believes applies here.[1]

The plaintiff argues that the railroad, having breached no duty in connection with the Law Board hearings, was entitled to the benefit of the finality of that decision. *Andrews v. Louisville & Nashville Railroad Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). That being the case, when the union breached its duty of fair representation and deprived the plaintiff of a *meaningful* hearing, the union deprived him of his *only* hearing and, in so doing, has become responsible for *all* of the damages suffered by plaintiff, even without an adjudication of the merits of the underlying wrongful discharge claim.

The Court cannot accept this reasoning. The *Andrews* decision did not concern the

duty of fair representation and thus did not consider the effect of a breach of that duty upon finality. That question was, however, addressed in *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1975), in the context of a suit pursuant to section 301 of the Labor Management Relations Act (LMRA). Justice White stated at 567, 96 S.Ct. at 1058:

> "The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures; if it seriously undermines the integrity of the arbitral process the union's breach also removes the bar of the finality provisions of the contract."

He also cited *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), to the effect that a decision of a joint arbitration committee was reviewable and vulnerable if tainted by breach of the union's duty even though the employer had not conspired with the union.

Justice Stewart concurred:

> "[P]roof of breach of the Union's duty of fair representation will remove the bar of finality from the arbitral decision . . . ."

*Hines, supra*, 424 U.S. at 572, 96 S.Ct. at 1060. *Hines* has been followed in many circuits in section 301 suits. The question, however, remains and is vital here: can *Hines* be applied to cases brought pursuant to the Railway Labor Act (RLA)?

█ The schemes enacted by Congress for dispute resolution under the RLA are not the same as under the LMRA. The most important difference is that arbitration under RLA is provided by statute, to be undertaken by the National Railroad Adjustment Board and, under section 153

1. As the proof developed, that conclusion is highly debatable. The action of the neutral judge in automatically applying his own personal "rule," that is, always to go along with the neutral doctor, because difficult medical cases were beyond his ability to decide any other way, may well come within those narrow grounds. The procedure set forth in section 153 necessarily implies a decision process in which the members, especially the neutral

member appointed under the auspices of the National Mediation Board, will exercise judgment and evaluate evidence. The automatic application of such a "rule" negates the very judgmental process envisioned by Congress in establishing Law Boards.

It should be noted that any action brought pursuant to section 153 First (g) is subject to a two year limitation as set forth in section 153 First (r) and would now be time barred.

Second, Public Law Boards. *Cole v. Erie Lackawanna Ry.*, 541 F.2d 528 (6th Cir. 1976). The RLA mandates finality to the Law Board's decision, with judicial review limited to questioning whether the Board acted outside its jurisdiction, violated provisions of the Act, or was guilty of fraud or corruption.

■ The finality in LMRA cases where there has been arbitration while not statutory, is clearly set out in case law. *See* the *Steel Workers Trilogy*, 363 U.S. 564, 574, 593, 80 S.Ct. 1343, 1347, 1358, 4 L.Ed.2d 1403, 1409, 1424 (1960). Only a narrow standard of review is available for an arbitrator's decision. That standard is whether the arbitrator exceeded his authority.

So, while the RLA statutorily mandates arbitration and finality, the LMRA parallels its thrust that arbitration is desirable and should be final most of the time. *See Cole, supra* at 532.

■ Additionally, courts have indicated a willingness to apply the standards of one scheme to the other. A good example is the duty of fair representation itself, which was first set forth under the RLA in *Steele v. Louisville & N. R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), and imported to industries under National Labor Relations Act in *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). *See also, DeBoles v. Trans World Airlines*, 552 F.2d 1005, 1018, 1019 (3d Cir. 1977). Since "[W]e are concerned here with judicially created remedies for a judicially implied cause of action," *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 47 n.9, 99 S.Ct. 2121, 2125 n.9, 60 L.Ed.2d 698, 47 L.W. 4600, 4601 n.9 (1979), the Court is not without flexibility to imply that the rule concerning finality is parallel in the LMRA and RLA.

■ But, even assuming *arguendo* that there is not enough analogy in the two labor relations frameworks to warrant importation of *Hines* to the RLA, there is one more consideration which requires the application of *Hines* in these cases. To say on the one hand that the duty of fair represen-

tation in section 301 actions is so strong that where it is breached, a decision is tainted and there is no finality to the arbitrator's decision, and on the other that under the RLA the duty can be breached without affecting finality, is to create two duties having different effects and thus different natures. Such a conclusion flies in the face of the totally parallel development of the duty of fair representation under the two relevant Acts up to the present. The better view is that when a breach of the duty of fair representation is found in a RLA case, the bar of finality is removed from the award of the Public Law Board.

■ Based on that conclusion, the plaintiff here did not lose his only hearing; the taint has removed any finality in the award. Even though the railroad in no way conspired with the union in this case, the fact that the Board's decision was tainted by the breach would permit remand to the Law Board where this plaintiff could re-litigate his claim with competent representation, and the merits of his claim could be addressed. That remedy, however, is predicated on the presence before the Court of all the parties, including the railroad. Such is not the case here.

■ How then can the plaintiff be made whole? With *Hines* before us, to argue that the union should be liable for all the damages is clearly untenable. The union cannot be held accountable for damages, if any, caused by Frisco. *Vaca, supra,* is clear in its mandate that damages must be apportioned according to the wrongdoing; Justice Stewart restated that directive in *Hines, supra.*

An additional consideration in fashioning relief was stated by the Court in *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 47, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979):

"Our function, therefore, is to implement a remedial scheme that will best effectuate the purposes of the Railway Labor Act, recognizing that the overarching legislative goal is to facilitate collective bargaining and to achieve industrial peace."

Were the Frisco before the Court, the remedy would be apparent. Having found a breach, this Court would order that the claim be remanded to the Public Law Board, with instructions for proper selection of the neutral doctor and directives that the neutral Board member render his decision based on the facts and not on some arbitrary rule.[2] The plaintiff would be awarded attorney's fees and costs in this action and the new hearing (with *fair* representation) would provide him full and complete relief regardless of the outcome of that hearing.

But Frisco is not a party. Frisco was dismissed by the plaintiff voluntarily pursuant to Rule 41(a)(2), Federal Rules of Civil Procedure.[3] At this time, there is no ordinary manner in which the railroad can be joined as a party in this lawsuit because of the bar of limitations. In *Butler v. Local U. 823 Int. Bro. of Teamsters, Inc.*, 514 F.2d 442 (8th Cir. 1975), Judge Heaney considered when a section 301 cause of action accrued against the employer, which he characterized as an issue of federal law. Inasmuch as there is no clear expression of the congressional intent concerning limitations, he reasoned that the cause accrued when the employee's grievance was rejected and the necessary condition precedent to the suit had been met. Such a decision preserved symmetry with the union's obligation, for the employee's cause against the union clearly accrues at the rendering of the unfavorable grievance decision.

Applying that reasoning to the case before us, then, the cause of action accrued on October 31, 1975, approximately three and one-half years ago. This Court, by Memorandum and Order entered September 5, 1979, in the case of *Gatlin & DuPriest v. MoPac RR & UTU*, LR–76–C–30, has indicated that the statute of limitations it will apply in suits of this nature alleging the breach of the duty of fair representation is two years. Obviously, the railroad is no longer subject to the institution of a new suit against it.[4]

Without the railroad's presence, remand to the Public Law Board is an impossibility, although clearly the proper course. Without having the two parties to the award before it, this Court cannot remand the tainted award to a Public Law Board for a proper decision and for relief which would make the plaintiff whole.[5] There is little doubt that such a remand would vindicate the intent of Congress when it drew up the sections of the RLA mandating arbitration and would be the proper outcome of the suit before the Court. Cf. *Maddaloni v. Teamsters*, 92 LRRM 2474 (E.D.N.Y.1976).

Suppose, rather than a multiple party suit where some defendants have been dismissed, this were instead a new suit which the plaintiff chose to file against the union alone. Certainly the union could be heard to insist on the joinder of the railroad as an indispensible party, and this Court would, in light of *Hines* and *Vaca*, agree. In that case, make-whole relief would be available to the plaintiff upon a decision that there had been a breach of the duty. But if the union in that case failed to move to join the railroad, how could it possibly be heard to say that, although it had been adjudged to

---

**2.** Testimony indicated that this neutral member's method is fairly standard procedure. If that is the case, it surely violates the intent of Congress that disputes in the railway industry be resolved fairly as well as promptly and finally, in order to avoid interruption to commerce.

**3.** The dismissal was without prejudice, since it was not otherwise stated. *See* 5 Moore's Federal Practice ¶ 41.10 (2d ed. 1978).

**4.** A dismissal without prejudice leaves the situation so far as procedures are concerned the same as though the suit had never been brought. 5 Moore's Federal Practice ¶ 41.05[2] (2d ed. 1978). If a dismissed action should subsequently be reinstituted, the time during which that prior action, dismissed without prejudice, was pending cannot be deducted from the limitations period. *DeLong's, Inc. v. Stupp Bros. Bridge & Iron Co.*, 40 F.R.D. 127 (D.C.Mo. 1965).

**5.** "The fundamental purpose of fair representation suits is to compensate for injuries caused by violations of employees' rights. . . . [R]elief in each case should be fashioned to make the injured employee whole." *Foust, supra*, 442 U.S. at 48, 49, 99 S.Ct. at 2126.

have breached its duties, and despite the absence of the railroad before the Court, it had no liability or only a small part of the liability, and that the rest properly should be the liability of the railroad? Should not the union, because of its own failure to join the railroad before the statute of limitations ran against the railroad, be held accountable for the whole amount of the claim?

▓ In this case the defendant union had notice of the plaintiff's motion to dismiss and made no objection thereto. By its failure to insist on the railroad's continuation as a necessary, even indispensible (under *Hines*), party, did not the union put itself in the position of the party solely accountable should there be a finding of unfair representation? The union's failure to insist on the joinder of Frisco may be seen as an action which precluded a meaningful decision on the merits and a possible recovery against the railroad. Having deprived the plaintiff of that possibility by failing to object to the dismissal of the railroad, should not the union as sole defendant be held liable for *all* theoretically possible damages? But this conclusion is defective because it puts the blame for dismissal of the railroad upon the defendant alone when the responsibility clearly must be shared by the plaintiff. To place such responsibility on only one party would not meet the stated goals of the RLA to further industrial peace, in that the union could justifiably claim unfairness with results unsettling to collective bargaining.

▓ The failure to insist on the joinder of the railroad as a party defendant proves, upon closer analysis, to have been crucial to the resolution of the difficulty in awarding appropriate relief. The matter of having indispensable parties before it is so vital that the Court may, and does, raise the issue *sua sponte*. *Haby v. Stanolind Oil & Gas Co.*, 225 F.2d 723 (5th Cir. 1955). Cer-

tainly the remaining parties have not done so.

▓ No changes enacted by the Federal Rules of Civil Procedure have eroded the principle stated in *Shields v. Barrow*, 17 How. 129, 130, 139, 15 L.Ed. 158 (1854):

> "Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act upon that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it . . . are commonly termed necessary parties; but if their interests are separable from those of the parties before the court so that the court can proceed to a decree, and do complete and final justice, without affecting other persons, not before the court, the latter are not indispensable parties. . . . Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience . . . ." [are indispensible parties].

When the relief sought cannot be effective without the joinder of an absent party, that party is indispensable.

▓ Applying that standard to the facts already set out, it is clear that the railroad is an indispensable party; relief cannot be wholly awarded in its absence.[6] The railroad's presence is required so that the Court may make an adjudication equitable to all persons involved.

The absence of an indispensable party aborts the action.

> "Failure to join an indispensable party does not oust the jurisdiction of the court in the action before it. But such failure does destroy the power of the court to grant any relief which would in any way affect an absent indispensable party."

*Czosek v. O'Mara*, 397 U.S. 25, 29, 90 S.Ct. 770, 773, 25 L.Ed.2d 21 (1970).

---

**6.** "[D]amages against the union for loss of employment are unrecoverable except to the extent that its refusal to handle the grievances added to the difficulty and expense of collecting from the employer."

*Boris v. Moore*, 152 F.Supp. 602, 608, 609 (E.D.Wis.1957), *aff'd*, 253 F.2d 526 (7th Cir. 1958).

Even though all three parties were closely queried concerning dismissal and its effects, none raised the matter of the Frisco's indispensability. While it is clearly to the parties' detriment that this decision be made at this late juncture, the Court has no choice—and little compunction in view of the opportunities offered the plaintiff and the defendants prior to the trial—but to decide that the railroad is, post-*Hines*, an indispensable party to a claim of the breach of the duty of fair representation. This is required even though, as here, there is no indication that the railroad was implicated in any way in that breach, because the finding of the breach taints the decision reached in the hearing where the duty was breached and undermines the finality of the Law Board's decision, thereby affecting the interest of that defendant railroad.

■ Having determined that the railroad is an indispensable party, the Court finds it necessary to invoke its inherent power, as outlined in *John Simmons Co. v. Grier Brothers*, 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1921), a complete power over interlocutory orders in any case in which the Court retains jurisdiction. That power includes the ability of the Court to revise an interlocutory order prior to final judgment when it is consonant with equity to do so and when justice requires. *See generally* 7 Moore's Federal Practice ¶ 60.16[4] at 84 (2d ed. 1978).

■ Herein there has been no entry of a final order and the Court retains jurisdiction to consider revision of its interlocutory Order entered May 22, 1978, insofar as that Order dismissed the defendant St. Louis-San Francisco Railway. As has already been indicated, the proper disposition of this case, in keeping with the intent of the congressional scheme, would be remand to a properly conducted Public Law Board. In order to effect that, the railway must be a party to this action. There can be no make-whole relief for the plaintiff unless there can be an adjudication of the merits of his claim that he was wrongfully discharged.[7] Indeed, no reasonable or appropriate remedy appears possible without Frisco. Therefore, in the exercise of its inherent power, the Court now states that it is contemplating setting aside its Order of May 22, 1978, insofar as that Order dismissed the railway unless legal cause can be shown that it should not. The defendant St. Louis-San Francisco Railway Company is entitled to be heard on this important issue. An Order will therefore be entered directing that a copy of this Memorandum be served upon said railroad and further directing that said railroad respond to the issue of the Court's authority to take the action contemplated and to the issue of the propriety of its doing so.

Since the proceedings in this case are far from complete, consideration of attorney's fees is premature.

If the Court concludes that it has the authority to, and that it would be just and proper to set aside its dismissal of the defendant railroad, the question will arise: will an entirely new trial be required? All parties, including the defendant railroad, are directed to brief this issue, filing simultaneous memorandum on or before October 5, 1979.

### MEMORANDUM OPINION

In a Memorandum entered on September 6, 1979, the Court raised several issues which have emerged in the remedial stage of this case. *Curtis v. United Transportation Union*, 486 F.Supp. 966 (E.D.Ark. 1979). The present Memorandum Opinion, in which the Court addresses those issues,

---

7. According to *Butler, supra*:

"[T]he damages assessed against the union are inextricably tied to the breach of contract. If a court determines that the employer had not breached the contract, even if the union had breached its independent duty of fair representation, the employee will not be entitled to collect from the union damages flowing from the alleged contract breach." On the other hand, adjudication finding a contract breach will enable the employee to collect from the wrong-doer.

should be read in conjunction with that earlier Memorandum.

A brief summary of the history and present posture of the case will suffice to identify the remaining issues. The plaintiff, Mr. Curtis, sued his union, the United Transportation Union (UTU), for breach of the duty of fair representation in a hearing before Public Law Board No. 717, held pursuant to the Railway Labor Act, 45 U.S.C. § 153. The outcome of the hearing had been an award upholding the refusal of the St. Louis-San Francisco Railway Company (the Frisco), Mr. Curtis' former employer, to reinstate him after he had had surgery.

The Frisco and Public Law Board No. 717 were originally joined as defendants. At the plaintiff's instance, the complaint was dismissed as to the Frisco on May 22, 1978. The complaint was dismissed as to Public Law Board No. 717 for failure to state a claim.

After a trial to the court on February 12, 1979, the Court concluded that UTU had breached its duty of fair representation. The Court's findings and conclusions are detailed in the Memorandum of September 6, 1979. *Id.*

As noted in the Memorandum, the appropriate remedy for the breach is a remand of the claim to the Public Law Board with procedural instructions from the Court. However, this remedy is unavailable if the Frisco is not before the Court. *Id.* Therefore, the Court has raised the issues of the propriety of its bringing the Frisco back into the case and of the procedures which are required if the Frisco is brought back into the case.

I

■ The law is well settled that, in the absence of an express determination that there is no just reason for delay and an express direction for the entry of judgment, an order dismissing some but not all of the defendants in a multi-party case is an interlocutory, rather than a final, order. F.R. Civ.P., Rule 54(b); *Scarrella v. Midwest Federal Savings and Loan*, 536 F.2d 1207, 1209 (8th Cir. 1976), *cert. denied*, 429 U.S.

885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976); *McNally v. Pulitzer Publishing Company*, 532 F.2d 69, 73 (8th Cir. 1976), *cert. denied*, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976); *Haley v. Simmons*, 529 F.2d 78, 79 (8th Cir. 1976); *Lane v. Graves*, 518 F.2d 965 (8th Cir. 1975). The order is subject to revision at any time prior to the entry of final judgment. F.R.Civ.P., Rule 54(b). Having decided in the Memorandum of September 6, 1979, that the Frisco is an indispensable party for the purpose of effecting the remedy in this case, the Court now revises its Memorandum and Order of May 22, 1978. To the extent that the Memorandum and Order dismissed the case as to the Frisco, it will be vacated, and the Frisco will be reinstated as a defendant in this case.

■ Taking into account all equitable considerations, the reinstatement of the Frisco is an appropriate action despite the fact that the statute of limitations has run since the Frisco's dismissal. *See Curtis v. UTU*, *supra*, 486 F.Supp. 966. Because the Frisco is an indispensable party for the granting of complete relief, the only alternatives to its reinstatement would be the granting of partial relief or the dismissal of the action. For the reasons which follow, neither of the alternatives is viable, fair, or appropriate.

■ The granting of partial relief is not possible at this stage of this litigation. The only potential partial relief which would not involve the Frisco is an award of damages against UTU. The limited scope of this Court's jurisdiction to review the proceedings before the Public Law Board convinces the Court that it should not make a *de novo* determination on the merits of the employment dispute adjudicated therein. 45 U.S.C. § 153 First (q); *Gunther v. San Diego & Arizona Eastern Railway Co.*, 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965); *Kotakis v. Elgin, Joliet & Eastern Railway Co.*, 520 F.2d 570 (7th Cir. 1975), *cert. denied*, 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 389 (1975). In the absence of such a determination, however, any damages as-

sessed against UTU would be speculative. Unless and until the Public Law Board determines that Mr. Curtis is entitled to reinstatement as a Frisco employee, no damages may be awarded to him. The only recompense which the Court could properly make to him at this point would be the costs and attorneys' fees involved in this litigation and any he incurred in the prior proceeding before the Public Law Board.

Neither is the dismissal of this action for inability to join an indispensable party a viable alternative. As stated, the Court *is* able to bring the Frisco back into this case, pursuant to Rule 54(b). Furthermore, were the Court to refuse to reinstate the Frisco as a defendant, the interlocutory order of May 22, 1978, dismissing the Frisco would be appealable as a part of the final judgment entered in this case. *See Scarrella, supra*, 536 F.2d 1207; *McNally, supra*, 532 F.2d 69; *Haley, supra*, 529 F.2d 78; *Lane, supra*, 518 F.2d 965. Equitable and legal considerations convince the Court that were this case dismissed with no relief to the plaintiff because of the Frisco's absence, the Court of Appeals would appropriately reverse and remand the case with instructions to reinstate the Frisco as a defendant. Dismissal based on the Frisco's absence is, therefore, not acceptable.

## II

Having decided to reinstate the Frisco as a defendant, the Court now explores the procedures which should be required if an appropriate remedy is to be fashioned. The sources of the applicable procedural requirements are the Due Process Clause of the Fifth Amendment and relevant case law.

Although the Court has found no case which involves the precise situation presented here, some cases are helpful in the directions and options they suggest. In *United States v. New York Telephone Company*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977) (*New York Telephone*), the Supreme Court upheld a district court order "authorizing agents of the Federal Bureau of Investigation (FBI) to install and use pen registers with respect to two telephones and directing the New York Telephone Company (the Company) to furnish the FBI 'all information, facilities and technical assistance' necessary to employ the pen registers unobtrusively," *id.* at 161, 98 S.Ct. at 367 despite the fact that the company was not a party before the district court at the time the order was issued. The order also directed the FBI to compensate the Company at prevailing rates for any assistance it provided. The Court stated:

> The power conferred by the [All Writs] Act [28 U.S.C. § 1651(a)] extends, under appropriate circumstances, to persons, who though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice . . . and encompasses even those who have not taken any affirmative action to hinder justice.

*Id.* at 174, 98 S.Ct. at 373 (citations and footnote omitted). The Court did not address the due process implications of its decision. It did suggest that any such implications were minimal in light of its conclusion that the Company had no substantial interest in not providing the assistance ordered. This conclusion was based on the facts that the Company regularly employed pen registers for its own purposes and that full compensation was ordered for any services rendered.

The factors which distinguish *New York Telephone* from the case *sub judice* include the exigencies of criminal law enforcement, the opportunity of the Company to make its initial appearance after the issuance of the order for the purpose of challenging the order on the merits, and the complete monetary compensation for any actions required of the Company. Nevertheless, the case does provide a precedent for a district court's ordering action by a party not represented in a consideration of the merits upon which the court's order is based.

In *DuShane v. Conlisk*, 583 F.2d 965 (7th Cir. 1978), the district court had declared illegal the suspension of the plaintiff, a policeman, and had required his reinstate-

ment. When the plaintiff had petitioned for additional relief involving promotional opportunities, the court had denied the relief on the grounds that the Civil Service Commission (the Commission) was a necessary party because of its role in promotional decisions and that the Commission could not be joined after judgment and subjected to remedial orders without an opportunity to participate in the litigation of the merits. The Court of Appeals for the Seventh Circuit reversed. The appellate court relied on *Reichenberg v. Nelson*, 310 F.Supp. 248 (D.Neb.1970), in holding that the Commission could be added *sua sponte* by the court for remedial purposes, even after judgment. The court relied on *New York Telephone, supra*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376, in holding that "[a]ny supplemental relief that is required by the district court may be enforced against the Commission . . . ." 583 F.2d at 967. The appellate court directed the district court to join the Commission as a party and to determine what, if any, relief was required. *Id.* The Court of Appeals did leave open the possibility of the Commission's participation in the determination of relief. It should also be noted that the relief sought was *supplemental* relief, the initial relief having already been granted.

*New York State Association for Retarded Children, Inc. v. Carey*, 438 F.Supp. 440 (E.D.N.Y.1977), involved a "Consent Judgment" followed by a "Stipulation and Order on Consent" under which the defendant New York State Department of Mental Hygiene (the Department) was required to enter into a contract with an independent contractor (UCP) for the operation of several buildings at a facility called "Willowbrook," which was under the Department's supervision. After the judgment and order were entered, the Department moved for the joinder of the union which represented the state employees at Willowbrook. One purpose of the joinder was determining whether the contract with UCP would infringe on any rights of the state employees at Willowbrook. The union, which had expressly rejected an invitation to intervene, objected to limited joinder on the ground that it could not be brought into the action without being given an opportunity to litigate the issues previously settled by the other parties in the consent judgment.

The Court joined the union for the purpose of making the determination sought. It refused to allow the union to relitigate settled issues. With regard to the union's due process argument, it stated:

> Finally, contrary to the union's claim, limited joinder will not deprive the union of due process since its sole purpose is to determine what union rights, if any, would be affected by the proposed UCP contract. *If it is determined that the union has any rights which would be violated by UCP contract, it will then be necessary for the court to fashion a proper remedy.*

*Id.* at 443 (emphasis supplied).

All three of the cases discussed above rest ultimately on the proposition that each party introduced after the decision on the merits had no substantial interest which would be adversely affected by the relief ordered. The party's opportunity for participation in the fashioning of a remedy was designed to ensure that the relief ordered did not prejudice the party by denying it the opportunity to litigate the merits of an action which would result in an adverse impact on any substantial interest it might have had. Each court determined that any substantial interest of the party introduced after a decision on the merits could be adequately protected in the remedial stage of the litigation.

Such an analysis is a tempting option in this case. The crucial issue is whether relief can be fashioned which will adequately compensate the plaintiff without adversely affecting any substantial interest of the Frisco. As previously noted, the Court is of the opinion that an essential element of any adequate relief for Mr. Curtis is a redetermination of his employment rights by the Public Law Board. At first blush it may appear that relief might be fashioned which would incorporate this element without adversely affecting the Frisco.

One possibility for such relief would involve a remand to the Public Law Board for a redetermination of Mr. Curtis' rights. If the Board were to find, in a proper proceeding, that he is not entitled to reinstatement, there would be an end to the matter. If, however, the Board were to find that he is entitled to reinstatement, UTU might be required to fully compensate him for *all* his damages. The Court has effectively rejected this possibility in the Memorandum of September 6, 1979, and it rejects it now. Such relief would not fully compensate Mr. Curtis if he is entitled to reinstatement, since the right to work is a vital part of one's life and since the work itself may be as important to him as the monetary relief he seeks. Furthermore, it would be unduly burdensome on UTU, which cannot be considered responsible for *all* of the damages to which Mr. Curtis may be entitled. *See Czosek v. O'Mara*, 397 U.S. 25, 29, 90 S.Ct. 770, 773, 25 L.Ed.2d 21 (1970).

A more promising alternative would also involve a remand to the Public Law Board. If the Board were to find no entitlement to reinstatement, Mr. Curtis and the Frisco might recover from UTU any damages and costs incurred because of UTU's breach. If the Board were to find an entitlement to reinstatement, UTU might be required to compensate Mr. Curtis for all damages it has caused, thereby minimizing the Frisco's liability. The Frisco might be required to reinstate Mr. Curtis and to compensate him for any damages caused entirely by its wrongful discharge and not covered by UTU. The Frisco might also recover from UTU damages or costs incurred because of UTU's breach.

Under this second scheme, all the parties would be returned to the situation they would have occupied had UTU not breached its duty of fair representation. Arguably, the Frisco would not be adversely affected or prejudiced in any way at this stage. Any adverse impact on the Frisco arising from the Board's determination would come after a due process hearing before the Board. If the Board found no reinstatement warranted, the Frisco would incur no expense which would not be paid by UTU.

If the Board ordered reinstatement, the Frisco would be in the position it should have occupied if the first Board adjudication had been proper. The Frisco would get everything to which it was entitled under the contract.

■ This analysis, while enticingly equitable on its face, misses a crucial point. The Frisco has a substantial interest in the finality of the Board's determination, even if that determination was wrong. This interest cannot be said to be insubstantial; in fact, it is paramount. The Frisco does not want to employ Mr. Curtis. It has not wanted to employ him since his operation. Its paramount interest throughout the proceedings involved in this litigation has been to avoid employing Mr. Curtis. The Court concludes that this interest, which involves both the liberty and the property of the Frisco, is sufficient to invoke the concerns of due process. The Court further concludes that it cannot fashion an adequate remedy which would not adversely affect the interest.

### III

■ The basic requirements of procedural due process are notice and an appropriate opportunity to be heard prior to the deprivation of a liberty or property interest. *Ochoa v. Hernandez Y Morales*, 230 U.S. 139, 161, 33 S.Ct. 1033, 1041, 57 L.Ed. 1427 (1913); *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed. 725 (1975) (14th Amendment). The Frisco was given notice of the claim adverse to its interest by the institution of this action, in which it was originally made a defendant. UTU now suggests that the Frisco has waived any due process right it may have had to be present at trial, since it did not insist on remaining in the case when it had an opportunity to do so. UTU and the plaintiff both suggest that the Frisco be allowed some sort of modified participation at this stage of the litigation, but that it not be granted an entire new trial.

The idea of a waiver by the Frisco is not as untenable as it might seem in the ab-

stract. Before the Court dismissed the Frisco, it wrote the parties a letter on March 9, 1978, requesting exploration of the roles of the parties, particularly the Frisco, in this litigation. The letter asked in part, "Is the employer to be joined in the section 1337 fair representation action as a necessary party?" The letter later stated, "Therefore if the duty of fair representation was breached in a case of this type, the relief would be remand to the Board for another adjudication." This letter put all the parties, including the Frisco, on notice with respect to the issues which are now troubling the Court. Nevertheless, the plaintiff subsequently moved for a dismissal without prejudice of the claims against the Frisco, and the Frisco did not object. The Court granted the dismissal.

Under these circumstances, it is clear that the Frisco should have been aware of its potential involvement in the remedial stage of this case. Nevertheless, the Court concludes that the Frisco did not waive its right to litigate on the merits before being involved in a remedial remand to the Board. In fact, the Frisco's attorney is the least culpable of all the parties in the creation of the present posture of this case. He probably reasoned correctly that without the Frisco's presence in the case, the Court could not grant a remedy which adversely affected a substantial interest of the Frisco. He pursued his client's best interest by extricating it from the case, thereby, he reasoned, preserving its interests intact. He did not intend to waive participation in anticipation of his client's being involved in the remedy; he intended to preclude a remedy adverse to the Frisco. Because of the ambiguities which pervade the procedural aspects of this case, the Court is unable to find a waiver by the Frisco of its fundamental right to due process.

## IV

There remains one qualification on the due process right to be heard which is particularly important in this case. It is that if a party's interests are already adequately represented in an action, that party may not be entitled to participate in the litigation of the merits, despite the fact that it may be affected by the outcome. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940) (14th Amendment); *United States v. Reserve Mining Company*, 380 F.Supp. 11, 28–29 (D.Minn.1974), aff'd on this issue, 514 F.2d 492, 534 (8th Cir. 1975). Various procedures analogous to the ones involved here, including joinder, have been explored to determine the substance of the doctrine of adequate representation. The most instructive are those involving a purported right to intervene, since Rule 24(a) of the Federal Rules of Civil Procedure parallels due process analysis in its criteria for intervention of right, explicitly requiring that an applicant's interest not be "adequately represented by existing parties." The issue in this case is whether the Frisco's interests were adequately represented by UTU at trial. Whether the Frisco is now entitled to participation in litigation on the merits is analogous to whether it would have been entitled to intervention of right before the trial. The considerations on adequacy of representation are the same, except that the Court now has the benefit of retrospect on the trial.

"Whether or not representation of an intervenor's interest by existing parties is to be considered inadequate hinges upon whether there has been a showing of '(1) collusion; (2) adversity of interest; (3) possible nonfeasance; or (4) incompetence.' " *British Airways Board v. Port Authority of New York and New Jersey*, 71 F.R.D. 583, 585 (S.D.N.Y.1976) (citation omitted). *See also* 3B Moore's Federal Practice ¶ 24.08[2] at 184–85; *Liddell v. Caldwell*, 546 F.2d 768, 771 (8th Cir. 1976), cert. denied, 433 U.S. 914, 97 S.Ct. 2987, 53 L.Ed.2d 1100 (1977). Of the four enumerated factors, the second, adversity of interest, is the only one which might prelude a finding of adequate representation in this case. The Court specifically finds that there has been no collusion, nonfeasance, or incompetence by UTU in this case.

Preliminarily, the Court notes that a would-be intervenor generally bears the

burden of showing one of the four factors if he is to intervene of right. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 636 n.10, 30 L.Ed.2d 686 (1972); *National Farm Line v. Interstate Commerce Commission*, 564 F.2d 381, 383 (10th Cir. 1977). In assessing the required showing, the courts have taken a cautious approach toward the denial of participation on the merits in litigation. Because of the fundamental nature of the right involved, a *minimal* showing of *possible* inadequacy has been sufficient to entitle a party to intervention. "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich*, 404 U.S. at 538 n.10, 92 S.Ct. at 636 n.10. In *Trbovich*, the Supreme Court found intervention warranted on the basis of "sufficient doubt about the adequacy of representation." *Id.* at 538, 92 S.Ct. at 636. In this case, in which the Frisco is being brought into the case against its will after the litigation on the merits, the Court is particularly cautious in its consideration of a denial of participation by the Frisco. Any minimal showing of possible inadequacy must be convincingly rebutted if adequacy is to be established.

In considering adversity of interest, the Court of Appeals for the Eight Circuit has not required strict adversity as a predicate for intervention but has found "disparate" and "sufficiently different" interests compelling. *See, e. g., Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action*, 558 F.2d 861, 870 (8th Cir. 1977); *Commercial Union Insurance Company v. City of St. Louis*, 497 F.2d 957, 958 (8th Cir. 1974). Cases in which representation by existing parties *is* found adequate often involve virtual identity of existing and would-be parties or of their interests. *See, e.g., Welsch v. Likins*, 550 F.2d 1122, 1131 (8th Cir. 1977) (interests of governor and legislature adequately represented by commissioners of state executive departments appointed by governor and confirmed by senate); *United States v. Reserve Mining Company, supra*, 380 F.Supp. at 28–29

(post-decision joinder of parent corporations upheld when subsidiary which defended at trial was their "agent"/"personification"); *Moore v. Knowles*, 482 F.2d 1069, 1075 (5th Cir. 1973) (no prejudice in failure to join board as separate entity where board members were present and were represented by board lawyer with board funds); *Edmondson v. State of Nebraska*, 383 F.2d 123, 127 (8th Cir. 1967) (adequate representation by administrator of estate in his personal capacity, but with interest identical to estate's, bars intervention on behalf of estate).

The interests of the Frisco and UTU have varied vis-a-vis each other in this matter. The two parties were adversaries before the Public Law Board, where the facts behind this litigation arose. After the Board decision, however, both parties became interested in the finality of the decision. Their interests converged for the litigation before this Court. At the remedial stage, their interests again diverge as each tries to minimize the extent of its own remedial obligation. On the limited issue of liability at trial, the defendants shared a common interest. The only issue upon which liability depended was whether there had been a breach of the duty of fair representation by UTU. Both parties were interested in the finality of the Board decision and in the avoidance of liability. Both would contest allegations of a breach.

Nevertheless, the divergence of interests at different stages of the litigation has implications for the adequacy issue. The question is whether the distinct posture of UTU at the Board hearing or at the remedial stage here deprived it of some knowledge or incentive which the Frisco had and which might have affected the adequacy of representation. The issue becomes whether the Frisco might have brought anything to the trial that UTU did not bring. It is not an issue of incompetence or nonfeasance but an issue of whether the different roles demanded by different interests at different stages of the case preclude a finding of adequate representation.

At trial the claim of a breach of the duty of fair representation involved more than the UTU's actions before the Board. It involved a thorough investigation of the entire context and procedure of the hearing. At the hearing stage, the Frisco had been opposed to UTU, and its participation was completely independent. It may well have had additional relevant knowledge of the procedures, including the constitution and operation of the Board, which was never communicated to UTU or to the Court. The Frisco had no incentive to communicate any such knowledge after it was dismissed because it correctly concluded that its absence from the case barred relief which adversely affected it.

The different perspectives on potential remedies might also have called for different approaches at trial. If the Frisco had decided that liability was a foregone conclusion, it might have made a special effort to exculpate itself or to inculpate UTU. In short, the different roles of these two defendants at different stages of the litigation could have dictated substantially different presentations at trial. Because of doubts about the adequacy of UTU's representation of the Frisco's interests, this Court is not willing to preclude the Frisco from having its day in court on the crucial issues of liability.

The plaintiff and UTU have suggested that the Frisco be allowed a limited form of participation, such as cross-examination of witnesses who testified at trial and presentation of any additional evidence. In view of the fact that a decision on the merits has already been made and that such truncated procedures would not by any means provide the Frisco with the balanced presentation it might have made at the trial, the Court concludes that an abridged, post-trial presentation is not adequate to assure the Frisco due process of law.

An additional equitable consideration significantly influences the Court's decision. In a brief to the Court on the issues addressed herein, the plaintiff explained its voluntary dismissal of the claim against the Frisco as follows:

It is apparent that all three parties were laboring under an erroneous opinion as to the effect of the Public Law Board award in view of the finding of the breach of duty of fair representation on the part of the union. *Plaintiff then proceeded with the case upon the theory* that the union [railroad?] was not amiable [sic] to the claim for damages and *that plaintiff's only recourse was against the union.*

Plaintiff's Memorandum, October 5, 1979 (emphasis supplied). The plaintiff must be, at least to some extent, the master of his own case. This Court is loath to allow the plaintiff to drop a defendant on the belief that he has no case against that defendant and then, after prevailing on the merits in the defendant's absence, to bring the defendant back into the case for the purpose of exacting relief from it. The Frisco would undoubtedly have been present at trial and throughout this litigation if it had anticipated that it might be required to rehire Mr. Curtis and to pay him back pay. It is possible that it will have been seriously prejudiced by the plaintiff's decision to forego relief from it if the Court now orders remedial measures by it. The Court cannot conclude that the Frisco has been adequately represented at trial or that it will have been adequately represented if it is allowed only a supplemental presentation.

## CONCLUSION

The Frisco has requested a new trial before a different judge if it is brought back into this case. It is entitled to that relief.

It is therefore Ordered that the Court's Order of May 22, 1978, be, and it is hereby, vacated to the extent that it dismissed the complaint as to the Frisco. The Frisco is hereby reinstated as a defendant in this case.

It is further Ordered that the findings of fact and conclusions of law heretofore announced by this Court be, and they are hereby, set aside and declared null and void.

It is further Ordered that the Clerk reassign this case by lot to another judge of this Court.

Pursuant to 28 U.S.C. § 1292(b) and upon findings that the issues identified below involve controlling questions of law as to which there are substantial grounds for difference of opinion and that an immediate appeal of the issues may materially advance the ultimate termination of the litigation, it is further Ordered that the following issues be, and they are hereby, certified as appropriate issues for immediate appeal:

1. Whether, on the basis of the facts found by the Court after the first trial, the Court could properly, under existing law, conclude that UTU breached its duty of fair representation;

2. Whether the Court may properly bring the Frisco back into the case; and

3. If the Frisco may be brought back into the case, whether a completely new trial is necessary at this point.