**NEW YORK STATE ASSOCIATION FOR RETARDED CHILDREN, INC., et al., Plaintiffs,**

v.

**Hugh L. CAREY, Individually and as Governor of the State of New York, et al., Defendants,**

**United States of America, Amicus Curiae.**

**Nos. 72 Civ. 356, 72 Civ. 357.**

United States District Court, E. D. New York.

May 5, 1975.

---

Bruce J. Ennis, New York Civil Liberties Union & Mental Health Law Project, New York City, Christopher A. Hansen, Mental Health Law Project, New York City, for and on behalf of all named plaintiffs in No. 72 Civ. 356 and the class.

J. Stanley Pottinger, Asst. Atty. Gen., Diane S. Dorfman, Michael S. Lottman, Jack R. Marker, Attys., Civil Rights Div., Dept. of Justice, Washington, D.C., for amicus curiae United States.

Kalman Finkel, Attorney-in-Charge The Legal Aid Society, Civil Div., New York City, Anita Fisher Barrett, John E. Kirklin, The Legal Aid Society Civil Appeals Bureau, New York City, Joan Mangones, Douglas Leonard, The Legal Aid Society Staten Island Neighborhood Office, Staten Island, N.Y., of counsel; for and on behalf of all named plaintiffs in No. 72 Civ. 357 and the class.

Louis J. Lefkowitz, Atty. Gen., New York City, for and on behalf of all defendants; by Joel Lewittes, Asst. Atty. Gen., of counsel.

## MEMORANDUM

JUDD, District Judge.

A hearing has been held on the parties' motion for approval of a consent judgment terminating this civil rights action concerning the care and treatment of mentally retarded children and adults residing at Willowbrook State Developmental Center (formerly the Willowbrook State School).

During the three-year course of this litigation, the fate of the mentally impaired members of our society has passed from an arcane concern to a major issue both of constitutional rights and social policy. The proposed consent judgment resolving this litigation is partly a fruit of that process.

As pointed out in this court's Memorandum of April 23, 1975, the proposed consent judgment was formulated after prolonged hearings before this court, and as the result of extensive negotiations between the parties. During these negotiations, private counsel for the plaintiffs were assisted by representatives of the Civil Rights Division of the United States Department of Justice, and the defendants were represented by the Attorney General of the State of New York, as well as by representatives of Governor Carey's office, the Budget Director, and the Department of Mental Hygiene.

This court's original determination that the action could be maintained as a class action (Memorandum and Order of July 28, 1972) included a finding that the plaintiffs would adequately represent all members of the class. The court's observations during this litigation have reinforced that view. Counsel for plaintiffs have demonstrated skill and a great capacity for work in assembling facts concerning each aspect of conditions at Willowbrook, evaluating the results of this court's preliminary injunction of April 10, 1973, and providing expert testimony as to the needs of Willowbrook residents and the methods

and programs employed in institutions elsewhere in the United States.

The proposed consent judgment includes an Appendix of "Steps, Standards and Procedures" covering 29 single-spaced pages, and dealing with 23 areas, all designed to secure the constitutional rights of Willowbrook residents to protection from harm. The proposed judgment recites that these

are not optimal or ideal standards, nor are they just custodial standards. They are based on the recognition that retarded persons, regardless of the degree of handicapping conditions, are capable of physical, intellectual, emotional and social growth, and . . . that a certain level of affirmative intervention and programming is necessary if that capacity for growth is to be preserved, and regression prevented.

The defendants agree that "within their lawful authority," and "subject to any legislative appproval that may be required," they shall "take all actions necessary to secure implementation of the steps, standards and procedures," as well as "all steps necessary to ensure the full and timely financing of this judgment." The proposed judgment is agreed to apply to "all residents of Willowbrook and, unless inappropriate, to all other members of the class."

Many of the Steps, Standards and Procedures are to be achieved within thirteen months after the signing of the judgment, although different times are specified for some provisions.

The proposed judgment further provides for the appointment of a Review Panel to monitor implementation of the judgment and to perform other functions, as well as a Professional Advisory Board and a Consumer Advisory Board for Willowbrook. The court reserves jurisdiction for any further action that may be necessary after the entry of the final judgment and the commencement of its implementation.

The proposed judgment details reforms with regard to physical environment, staffing, programs, and therapy of various kinds. It sets a goal of developing community facilities and sharply reducing the population of Willowbrook. Specifically, Part V of the Steps, Standards and Procedures states:

Defendants shall take all steps necessary to develop and operate a broad range of non-institutional community facilities and programs to meet the needs of Willowbrook's residents and of the class. Within six years from the date of this judgment Willowbrook shall be reduced to an institution of 250 or fewer beds to serve the needs of residents who require institutional care and who come from the geographical area of Staten Island. The Review Panel shall annually evaluate progress toward this objective.

### Objections

No one appeared at the public hearing to voice any objection to the proposed judgment.

One written objection was submitted by a citizen who is a weekly visitor to Willowbrook. Mrs. Else Grunwald objected to the proposed limitation of Willowbrook to a small institution of 250 residents from the Staten Island area. She asserted that the buildings should be utilized instead for "new experiments" with "reliable, qualified, tested, and investigated personnel for smaller groups." It is not part of the judgment that the Willowbrook buildings not used for the smaller number of residents shall be abandoned; the state has a right to find other appropriate uses for them, and presumably will do so in the six year period provided in the judgment. If the parties have determined that dispersal of most of the Willowbrook residents is better than other possible alternatives, the court believes that their agreement on the subject should be accepted.

A letter from several members of the Keener Parents Association, received in March, objected to the closing of the

Keener facilities, to which some Willow-brook residents have been transferred. Although an earlier draft of the consent judgment provided for the closing of the Keener facility, the form submitted to the court provides instead for the evaluation of the Keener Unit by the Review Panel.

Murray B. Schneps, one of the plaintiffs, called attention at the hearing to a notice about budget cutbacks in the Mental Hygiene Department, but a letter filed by Commissioner of Mental Hygiene Lawrence C. Kolb and Deputy Commissioner Robert W. Hayes assures that these proposed cutbacks will not impair the implementation of the final judgment.

None of the objections or comments provides any reason for not approving the proposed judgment on consent.

### The Applicable Standard

This court's Memorandum and Order of April 10, 1973 found that there was a constitutional right to protection from harm, even in respect of persons whose confinement was not involuntary. The final judgment is couched in those terms, although it provides greater relief than did the preliminary injunction. Briefs submitted by the New York Attorney General had urged that the court change its position and dismiss the complaint.

Had this case been finally submitted for determination on the merits, the court would have faced a substantial burden in analyzing the briefs and the mass of testimonial and documentary evidence which was submitted by both sides and which bears on the right to relief and the formulation of the various categories of relief. Happily, the parties have relieved the court of this task and have brought to bear on the forging of relief their evident expertise. The court has reviewed the proposed judgment and each of the Steps, Standards and Procedures, and finds them neither impractical, improper nor beyond the scope of the complaint.

One final point should be addressed with regard to the extent and detail of the judgment hereby approved.

The consent judgment reflects the fact that protection from harm requires relief more extensive than this court originally contemplated, because harm can result not only from neglect but from conditions which cause regression or which prevent development of an individual's capabilities.

During the interval since this court's preliminary injunction, there have been significant judicial decisions in the field. In Donaldson v. O'Connor, 493 F. 2d 507, 527 (5th Cir. 1974), cert. granted, 419 U.S. 894, 95 S.Ct. 171, 42 L.Ed. 2d 138 (argued and awaiting decision), the Fifth Circuit in an opinion by Judge Wisdom held that

> where a nondangerous patient is involuntarily civilly committed to a state mental hospital . . . such a patient has a constitutional right to such treatment as will help him to be cured or to improve his mental condition.

In Wyatt v. Aderholt, 503 F.2d 1305 (5th Cir. 1974), the same court upheld lower court rulings that there is a "right to treatment" for civilly committed mentally retarded persons. It held that persons in institutions for the mentally handicapped were entitled to a constitutional minimum quality of care or treatment even if their confinement was justified only by the "need for care." 503 F.2d at 1313. See also Welsch v. Likins, 373 F.Supp. 487 (D.Minn.1974); Davis v. Watkins, 384 F.Supp. 1196 (N. D.Ohio 1974).

A decree with some similarity to the final decree here was entered by the District Court in Wyatt v. Stickney, 344 F.Supp. 373, 379 (M.D.Ala.1972), and was affirmed in Wyatt v. Aderholt, supra. The district court decision in Wyatt included 49 detailed regulations

under its "Minimum Constitutional Standards for Adequate Habilitation of the Mentally Retarded" (344 F.Supp. at 395), and named seven members of a Human Rights Committee for the institution. 344 F.Supp. at 407.

Somewhat different legal rubrics have been employed in these cases—"protection from harm" in this case and "right to treatment" and "need for care" in others. It appears that there is no bright line separating these standards. In the present posture of this case, there is no need for the court to re-examine the constitutional standard properly applicable to Willowbrook's residents. The relief which the parties agreed to will advance the very rights enunciated in the case law since this court's 1973 ruling.

### Other Matters

During the pendency of the action there have been a number of changes, among the defendant officeholders, from the Governor to the Director of the Willowbrook Developmental Center. The new holders of the various offices described in the caption should be substituted as defendants and the original defendants should be excused from further participation in the action.

The court also notes that the plaintiffs' right to apply for attorneys' fees, and defendants' right to object to such fees, is reserved for further action by the court.

While the court hopes that it will not have to consider requests for action by the Review Panel, it is appropriate to retain jurisdiction for the purpose of implementing the consent judgment.

The court has accordingly signed the "Final Judgment on Consent." This includes the substitution of defendants indicated in the caption of the judgment for the officers named as defendants earlier in the litigation.