NEW YORK STATE ASSOCIATION FOR RETARDED CHILDREN, INC., et al., and Patricia Parisi et al., Plaintiffs,

v.

Hugh L. CAREY, individually and as Governor of the State of New York, et al., Defendants.

United States of America, Amicus Curiae.

Nos. 72–C–356, 72–C–357.

United States District Court, E. D. New York.

March 8, 1976.

Jack Bernstein, New York City, for plaintiff New York State Ass'n for Retarded Children, Inc.

Bruce J. Ennis, Christopher A. Hansen, Anita Fisher Barrett, N.Y. Civil Liberties Union, New York City, for other named plaintiffs.

J. Stanley Pottinger, Asst. Atty. Gen., by Louis M. Thrasher, Daniel F. Rinzel, Jack R. Marker, Civil Rights Div., Dept. of Justice, Washington, D. C., for U. S. amicus curiae.

Murray B. Schneps, Vice Chairman on behalf of the Review Panel, Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; Brenda Soloff, Asst. Atty. Gen., New York City, of counsel.

JUDD, District Judge.

## MEMORANDUM

### (*Review Panel Functions*)

A significant issue arose at the court hearing on February 10, 1976 concerning the function of the Review Panel, whether it is confined to post-audit powers as suggested by defendants, or whether it may function in respect to policies at Willowbrook before they are developed and implemented.

### *Facts*

The post-audit question touches on many aspects of the care and treatment available at the Willowbrook Developmental Center, although the issue specifically arose in connection with a recommendation by the Panel that the Department employ an educational consultant. It now appears that the Department subsequently engaged such a consultant without discussion with the Review Panel.

The functions of the Review Panel are set forth in Paragraphs 7 and 8 of the Final Judgment on Consent dated April 30, 1975, and in various portions of the "Steps, Standards and Procedures" which are annexed to the Judgment. Among other things, the Panel is to receive reports of Willowbrook supervisors

pursuant to Paragraph 7(d) of the Judgment and of its own staff pursuant to Paragraph 7(e) of the Judgment. It is authorized broadly to have access to all records and to interview "any member of the class or employee of the defendants . . . to the extent necessary to the discharge of their duties under this judgment." The Review Panel may not only make written recommendations to defendants of steps "deemed necessary to achieve or maintain compliance with the provisions of this judgment" under Paragraph 8(b) of the Judgment, but under Paragraph 8(c) it may also make informal suggestions to the defendant "in whatever form they deem appropriate."

The retained jurisdiction of the court under Paragraph 9 of the Judgment includes the right to make further orders "necessary or appropriate for the construction of, implementation of, or enforcement of compliance with this judgment or any of the provisions thereof."

The Review Panel is also authorized to utilize the experience and expertise of the Consumer Advisory Board and the Professional Advisory Board described in the Steps, Standards and Procedures, as well as the advice and assistance of other experts.

The provisions for the Review Panel were contained in a Judgment agreed upon by the parties after long negotiations. No evidence has been presented concerning the background of the language used, with respect to whether the Panel has only post-audit functions. The court must interpret the Judgment primarily from its language and from the nature of the problems which the court observed during the trial of the case and during the court's visits to the institution.

## Discussion

A rough pattern for the Review Panel is found in Chief Judge Frank M. Johnson, Jr.'s decision in *Wyatt v. Stickney*, 344 F.Supp. 373 (M.D.Ala.1972), *affirmed in relevant part sub nom.*, *Wyatt v. Aderholt*, 503 F.2d 1305 (5th Cir. 1974). In that case he appointed "human rights committees" for individual institutions for the mentally ill and directed that they "shall have review of all research proposals and all rehabilitation programs, to ensure that the dignity and the human rights of patients are preserved." 344 F.Supp. at 376. The committees were also authorized to advise and assist patients who alleged that the Mental Health Board had failed to comply with judicially ordered guidelines, and to consult appropriate independent specialists, to be compensated by the defendants in that case. He denied a request for the appointment of a master to oversee the implementation of court-ordered standards because (344 F.Supp. at 377),

Federal courts are reluctant to assume control of any organization, but especially one operated by a state.

saying,

Nevertheless, defendants, as well as the other parties and amici in this case, are placed on notice that unless defendants do comply satisfactorily with this order, the Court will be obligated to appoint a master.

The appointment of human rights committees by Chief Judge Johnson came after he had first directed the defendants to prepare a specific plan for adequate treatment of patients, *Wyatt v. Stickney*, 325 F.Supp. 781, 785–86 (M.D. Ala.1971), and then found the defendant's plan inadequate, and ordered a hearing with a view to establishing standards of treatment. *Wyatt v. Stickney*, 334 F.Supp. 1341 (M.D.Ala.1971).

In a more recent case, where Judge Weinstein of this court found that the New York City Board of Education was not moving effectively to eliminate policies of racial segregation, the court designated a master to give effect to its decree. *Hart v. Community School Board of Brooklyn, N.Y. Sch. Dist. # 21*, 383 F.Supp. 699, 758–69 (E.D.N.Y.), *appeal dismissed*, 497 F.2d 1027 (2d Cir. 1974).

The Review Panel vigorously opposes any limitation to post-audit functions,

pointing out that irreparable harm might result to members of the class if it was required to monitor plans and activities passively, without power to suggest any modification until a policy or program, even an ill-advised one, had run its course. The Panel points to numerous provisions of the "Steps, Standards and Procedures," which call for prospective recommendations as to plans or ongoing activities. The position of the Review Panel is supported by the United States of America as *amicus* and by Concerned Parties to the Consent Judgment.

The spirit of the Consent Judgment indicates a variety of responsibilities for the Review Panel, including power to advise the Department and the Willowbrook administration concerning contemplated action, to receive and assess current information, to conduct informal discussions with the Department and the Willowbrook staff, and to make written recommendations followed by applications to the court as a last resort. The expertise of the Panel members would be inefficiently used if their sole purpose was merely to criticize after the event and not to advise and consult during the course of proceedings at Willowbrook.

The court did not contemplate an adversary relationship between the Review Panel and the Department of Mental Hygiene. Efforts by the Panel and the Advisory Boards to obtain information and give suggestions and recommendations deserve cooperation. Consultation has a cost in time and effort, but the history of this case shows that it is necessary.

The Consent Judgment was reviewed and approved by Governor Carey and Attorney General Lefkowitz personally. Since the Review Panel was an integral part of the Consent Judgment, it should not be hobbled.

Neither the Review Panel nor the court should usurp the actual administration of Willowbrook. Nevertheless, there are situations, as Chief Justice (then Judge) Burger observed in the second appeal in *Office of Communication of the United Church of Christ v. Federal Communications Commission*, 138 U.S.App.D.C. 112, 425 F.2d 543, 550 (1969), where "administrative conduct . . . is beyond repair" and the court must act itself. (See also statement of Judges McGowan and Tamm accompanying vote to deny rehearing *en banc. Id.,* at 551).

The scope of the Review Panel's functions may vary. Specific matters of interpretation, particularly the issues of community placement and the educational consultant, are now before the court. For the present, it is sufficient to enunciate guidelines which may minimize the need for future court involvement. Briefly, the Review Panel is not limited to a post-audit function. The Panel deserves the full co-operation of the staff of the Department of Mental Hygiene and the Willowbrook Developmental Center, to supply such information at such times and to take such steps as the Review Panel may require to facilitate its carrying out its function and to assure complete and timely implementation of the Consent Judgment in this case— all subject to court review if necessary.