**NEW YORK STATE ASSOCIATION FOR RETARDED CHILDREN, INC., et al., and Patricia Parisi, et al., Plaintiffs,**

v.

**Hugh L. CAREY, et al., Defendants.**

**No. 72 C 356/357.**

United States District Court, E. D. New York.

June 15, 1982.

---

Christopher A. Hansen, New York Civil Liberties Union, Bruce J. Ennis, American Civil Liberties Union, Archibald R. Murray, Executive Director and Attorney-in-Chief, The Legal Aid Soc., Kalman Finkel, Attorney-in-Charge, The Legal Aid Soc., Civ. Div., New York City, John E. Kirklin, Director of Litigation, The Legal Aid Soc., Civil Appeals & Law Reform Unit, New York City, for plaintiffs.

Robert Abrams, Atty. Gen. of N. Y., New York City (George D. Zuckerman, Asst. Sol. Gen., Frederick K. Mehlman, Asst. Atty. Gen., Frederic L. Lieberman, Deputy Asst. Atty. Gen., New York City, of counsel), for defendants.

BARTELS, District Judge.

Plaintiffs in the above-entitled class action, except for New York State Association of Retarded Children ("NYSARC"), seek attorney's fees pursuant to 42 U.S.C. § 1988 for services rendered from the inception of the suit through April 1, 1980.[1] The facts of the case have been fully set forth in numerous opinions of this court, both published and unpublished,[2] familiarity with which is assumed. Briefly, the suit was brought in March, 1972 against New York State under 42 U.S.C. § 1983 on behalf of retarded children and adults residing at Willowbrook Developmental Center, now known as Staten Island Developmental Center ("Willowbrook"). Plaintiffs alleged that conditions at Willowbrook, including, among other things, severe overcrowding and understaffing, violated their constitutional rights, and sought preliminary injunctive relief restricting certain abuses

---

1. Plaintiffs are not requesting fees at this time for any work done in this case on issues pertinent to the Civil Service Employees Association, 438 F.Supp. 440 (E.D.N.Y.1970); 456 F.Supp. 85 (E.D.N.Y.1978); or to the Board of Education, 466 F.Supp. 479 (E.D.N.Y.1979); 466 F.Supp. 487 (E.D.N.Y.1979), aff'd, 612 F.2d 644 (2d Cir. 1979), but have reserved the right to seek fees and costs against those defendants at a later date. They also are not requesting fees for services provided after April 1, 1980, but reserve the right to seek fees and costs for that time at a later date.

2. Prior reported decisions in this case appear at 357 F.Supp. 752 (E.D.N.Y.1973); 393 F.Supp. 715 (E.D.N.Y.1975); 409 F.Supp. 606 (E.D.N.Y. 1976); 438 F.Supp. 440 (E.D.N.Y.1977); 456

F.Supp. 85 (E.D.N.Y.1978); 466 F.Supp. 487 (E.D.N.Y.), aff'd, 612 F.2d 644 (2d Cir. 1979); 492 F.Supp. 1099 (E.D.N.Y.1980); 492 F.Supp. 1110 (E.D.N.Y.), rev'd, 631 F.2d 162 (2d Cir. 1980). Other opinions and orders were issued in this case, 72 Civ. 356/357, on March 5, 1976; March 8, 1976; March 10, 1976; March 30, 1976; February 7, 1977; February 8, 1977; March 10, 1977; June 10, 1977; September 7, 1977; October 11, 1977; October 17, 1977; March 21, 1978, aff'd, 596 F.2d 27 (2d Cir. 1979); March 28, 1978; April 26, 1978; September 15, 1978; September 24, 1978; September 29, 1978; October 2, 1978; June 6, 1979; October 22, 1979; September 9, 1980, aff'd, 661 F.2d 910 (2d Cir. 1981).

and requiring improved care. In April, 1973 Judge Judd granted a preliminary injunction according much of the relief requested. *NYSARC v. Rockefeller*, 357 F.Supp. 752, 756· (E.D.N.Y.1973). Trial of the case began on October 1, 1974 and ended on January 6, 1975 after attempts at settlement failed. However, renewed settlement negotiations after trial culminated in the signing of a consent decree by all parties in April, 1975. *NYSARC v. Carey*, 393 F.Supp. 715 (E.D.N.Y.1975). The Consent Judgment mandated that Willowbrook residents "be provided with the least restrictive and most normal living conditions possible," establishing detailed standards of care for class members and setting a timetable for "de-institutionalization" of the facility. The decree also provided for the creation of a Review Panel to monitor compliance with its terms and make recommendations to defendants "of steps deemed necessary to achieve or maintain compliance with the provisions of the judgment." Consent Judgment, Steps, Standards and Procedures ¶ 8(b).

It is fair to say that since April, 1975 all litigation concerning Willowbrook has revolved around questions of interpretation, implementation or enforcement of the terms of the Consent Judgment.[3] Plaintiffs' counsel's vigorous and effective representation of their clients has played a crucial role in the effort to turn the promises of the Consent Judgment into reality for the Willowbrook class members.

Title 42 U.S.C. § 1988 provides in relevant part that:

In any action or proceeding to enforce a provision of section . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

This court decided on March 21, 1978 that plaintiffs, as the prevailing parties within the meaning of the statute, were entitled to attorney's fees for services rendered in the case up to that time. *NYSARC v. Carey*, No. 72–C–356/357, slip op. at 7 (E.D.N.Y. March 21, 1978). The present application is for 16,409.7 hours logged by eight attorneys and two law students, valued by plaintiffs at $1,312,642.10, and costs and expenses valued at $21,035.48. With the application of the 100% bonus sought by counsel, the total amount sought is $2,542,430.63.[4]

■ In passing upon counsel's request, we follow the two-step procedure mandated in this circuit for the calculation of fee awards. First, it is necessary to establish a "lodestar" figure obtained by multiplying the hours properly expended in litigating the case by the hourly rate "normally charged for similar work by attorneys of like skill in the area." *Cohen v. West Haven Bd. of Police Com'rs*, 638 F.2d 496, 497, 505 (2d Cir. 1980); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974). Second, the court may adjust the lodestar upward or downward in light of "subjective" factors like the complexity of the case, counsel's skill, novelty of questions presented or nature of results achieved. *Cohen*, 638 F.2d at 505.[5]

Defendants do not deny liability for fees in this case, but vigorously contest the amount sought by plaintiffs, claiming that counsel seek compensation for excessive hours at inflated hourly rates. They also contend that no bonus or multiplier is war-

---

3. Matters requiring the court's resolution have included disputes concerning the following: the scope of the Review Panel's powers; community placement appropriations; procedures for objecting to the Review Panel's formal recommendations; plaintiffs' motion for contempt of the Consent Judgment; transfer of Willowbrook residents to the Bronx Developmental Center; staffing for the Consumer Advisory Board; exclusion of hepatitis B carrier class members from public school.

4. Plaintiffs' attorneys seek a 100% bonus only for those hours that they spent on the litigation of plaintiffs' claims. They seek no bonus for time spent on the fee application or for the law students' hours.

5. Neither plaintiffs nor defendants requested an evidentiary hearing, and both sides indicated their preference to rest on submissions. Under these circumstances and in light of the court's lengthy involvement with the case, the court concludes that an evidentiary hearing is unnecessary.

ranted. Before turning to our discussion of those points, however, we must mention briefly defendants' contentions that plaintiffs are entitled to no fees for services rendered prior to October 19, 1976, the effective date of § 1988.

It is by now well settled that § 1988 is applicable to cases pending when it became effective. *Beazer v. New York City Transit Authority*, 558 F.2d 97 (2d Cir. 1977), *rev'd on other grounds*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979); *Miller v. Carson*, 563 F.2d 741 (5th Cir. 1977). Defendants argue, however, that at the time of the signing of the Consent Judgment the parties contemplated that the then pending decision of the Supreme Court in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), would govern plaintiffs' request for an award of fees. *Alyeska* strictly limited the availability of fees. If it were applicable to the present application, the award of compensation would be problematic. Defendants also contend that even if *Alyeska* is not deemed to be applicable to plaintiffs' application, compensation for services rendered before October 19, 1976 must be denied because the first phase of the case was no longer pending when

§ 1988 became effective and attorney's fees under § 1988 can only be granted in cases pending at the statute's inception. Both of these arguments were rejected by the court in its decision of March 21, 1978, and defendants have not shown why the court should reverse its ruling.[6]

### Calculating the Lodestar

The starting point for determining counsel fees is the calculation of a "lodestar" representing the number of hours worked multiplied by a reasonable hourly rate. For the purposes of this application counsel have divided the litigation into four stages, as follows:

| | |
|---|---|
| Stage I: | Inception of suit through December 31, 1973; |
| Stage II: | January 1, 1974 through December 31, 1975; |
| Stage III: | January 1, 1976 through December 31, 1977; |
| Stage IV: | January 1, 1978 to April 1, 1980 (and hours spent on fee application itself). |

Plaintiffs seek compensation at a different rate for each attorney at each stage, depending on the attorney's years of experience at the time services were rendered.[7]

---

**6.** There is no evidence indicating that the parties agreed that *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), would govern the fee application. The legislative history of § 1988, 42 U.S.C., makes it clear that the liberal approach to pendency reflected in the Supreme Court's decision in *Bradley v. School Board of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), was intended to apply to § 1988. *See* Pub.L. 94–559, s. 22780, Source Book: Legislative History, Text and Other Documents, prepared by the Subcommittee on Constitutional Rights of the Committee on the Judiciary, U. S. Senate, 94th Cong., 2d Session at 255–56. *See also Northcross v. Board of Education of Memphis City School*, 611 F.2d 624 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Corpus v. Estelle*, 605 F.2d 175 (5th Cir. 1979), *cert. denied*, 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980); *Beazer v. New York City Transit Authority*, 558 F.2d 97 (2d Cir. 1977), *rev'd on other grounds*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979). Under this authority, even the pendency of an application for attorney's fees on October 19, 1976 is sufficient to make

§ 1988 applicable to the services rendered before that date. The fee awarded in this case, therefore, represents compensation for services rendered from its inception.

Defendants argue that even if § 1988 applies to cases pending on October 19, 1976, this action was not pending at that time, for the only ongoing proceedings were those meant to enforce the terms of the Consent Decree. *Escamilla v. Santos*, 591 F.2d 1086 (5th Cir. 1979); *Peacock v. Drew Municipal Separate School District*, 433 F.Supp. 1072 (N.D.Miss.1977), *aff'd*, 611 F.2d 1160 (5th Cir. 1980). The cases cited by defendants to support their argument are inapposite since here the post-decree proceedings cannot be considered supplemental, nor can they be treated discreetly; rather they are part of an integral process of enforcement built into the Consent Judgment. *NYSARC v. Carey*, 596 F.2d 27, 38 (2d Cir. 1979).

**7.** The hourly rates requested by the attorneys for the Legal Aid Society (LAS) and the New York Civil Liberties Union (NYCLU) are as follows:

Defendants object to compensation at the hourly rates sought on the grounds that: the rates reflect a market value standard which is inappropriate for non-profit law organizations; the award to the Legal Aid Society should in any event be reduced by a percentage equal to the percentage of its budget that is federally funded; the same rate is sought for all work, regardless of the type of service rendered; the rates sought are current rather than those prevailing at the time the services were rendered; the rates sought are higher than those charged by attorneys of like skill in the community for similar work.

■ Defendants' objections are exaggerated and largely without merit. It is well settled in this circuit that the public interest character of a law office is not a reason for reducing the fee award, which is to be measured by the standard of what other attorneys in the local community charge for similar services. *Beazer,* 558

| NAME OF ATTORNEY | APPROXIMATE PERIOD SERVICES PERFORMED | APPROXIMATE YEARS OF LEGAL EXPERIENCE WHEN SERVICE PERFORMED | AVERAGE PROPOSED HOURLY RATE |
|---|---|---|---|
| Bruce Ennis (Univ. Chicago 1965) NYCLU | 11/1/71–12/31/73 1/1/74–12/31/75 1/1/76–12/31/77 1/1/78–12/31/80 | 6 – 8 8 – 10 10 – 12 13 – 15 | $110 120 135 140 |
| Kalman Finkel (New York Univ. 1963) LAS | 11/1/71–12/31/73 1/1/78–12/15/80 | 8 – 10 15 – 17 | 120 140 |
| John Kirklin (Harvard Univ. 1970) LAS | 11/1/71–12/31/73 1/1/74–12/31/75 1/1/76–12/31/77 1/1/78–12/15/80 | 1 – 3 3 – 5 5 – 7 7 – 9 | 75 85 105 115 |
| Anita Barrett (Harvard Univ. 1971) LAS | 11/1/71–12/31/73 1/1/74–12/31/75 1/1/76–12/31/77 1/1/78–12/15/80 | 0 – 2 2 – 4 4 – 6 6 – 8 | $ 70 80 95 110 |
| Christopher Hansen (Univ. Chicago 1972) NYCLU | 11/20/73–12/31/74 1/ 1/74–12/31/75 1/ 1/76–12/31/77 1/ 1/78–12/15/80 | 0 – 1 1 – 3 3 – 5 5 – 7 | 70 75 85 100 |
| Carol Kellermann (Harvard Univ. 1976) LAS | 1/ 1/78–12/15/80 | 2 – 4 | 80 |
| Robert Feldt (Columbia Univ. 1963) LAS | 11/ 1/71–12/31/73 | 8 – 10 | 120 |
| Douglas Leonard (New York Univ. 1972) LAS | 1/ 1/74–12/31/75 | 1 – 3 | 75 |

F.2d at 100; *Torres v. Sachs*, 538 F.2d 10, 13 (2d Cir. 1976); *Mid-Hudson Legal Services v. G & U Inc.*, 465 F.Supp. 261 (S.D.N.Y. 1978). This circuit has indicated that district courts have discretion to reduce fee awards on account of federal funding, but that such a reduction is not mandatory and should not be done routinely. *Gagne v. Maher*, 594 F.2d 336, 345 (2d Cir.), *aff'd*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1979); *EEOC v. Enterprise Ass'n Steamfitters Local No. 638*, 542 F.2d 579, 592–93 (2d Cir. 1976), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977). While some courts have reduced fee awards to non-profit law organizations receiving public funding, *Gagne v. Maher*, 455 F.Supp. 1344, *aff'd in part and remanded in part*, 594 F.2d 336 (2d Cir.), *aff'd*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1979); *EEOC v. Enterprise Ass'n Steamfitters Local No. 638*, 400 F.Supp. 993, 998 (S.D.N.Y.1976), *aff'd in part and rev'd in part*, 542 F.2d 579 (2d Cir. 1976), *cert. denied*, 430 U.S. 911, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1977), we believe it is more consistent with § 1988's purpose of encouraging litigation to vindicate civil rights to compensate counsel at prevailing community rates. *EEOC v. Sage Realty Corp.*, 521 F.Supp. 263, 268–69 (S.D.N.Y.1981); *Mid-Hudson Legal Services, supra; Holley v. Lavine*, 464 F.Supp. 718 (S.D.N.Y.), *aff'd*, 605 F.2d 638 (2d Cir. 1979), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980).

■ Defendants' assertion that different types of legal work should be compensated at different rates is not completely accurate. The touchstone for setting an appropriate hourly rate is billing practices in the local legal community. *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir. 1977); *Cohen*, 638 F.2d at 505. It appears from affidavits submitted by private practitioners, both in this case and others decided by this court, that attorneys in the New York metropolitan area bill at a single rate all types of work properly chargeable to a client. This is not to say that plaintiffs' counsel should be compensated at attorney's rates for non-legal work of an administrative or clerical nature. *Steinberg v. Carey*,

470 F.Supp. 471 (S.D.N.Y.1979). But we defer our computation of the time each attorney spent on non-legal matters to our discussion of the hours claimed by counsel.

■ Defendants also assert that plaintiffs seek fees at a higher rate than is customarily charged by local attorneys of comparable skill for similar work. Attorney's fees in § 1988 fee awards should "be governed by the same standard which prevails in other types of equally complex Federal litigation such as antitrust cases, and not be reduced because the rights involved may be nonpecuniary in nature." S.Rep. No.94–1011, 94th Cong. 2d Sess. p. 6, U.S. Code Cong. & Admin.News 1978, p. 5908, 5913. Based on the court's acquaintance with fees currently charged by local firms, both large and small, and on its reading of the affidavits of John Hupper of Cravath, Swain & Moore and Melvyn Weiss of Milberg, Weiss, Bershad & Specthrie, the rates sought, while somewhat high in comparison to fees awarded counsel in local civil rights cases, are not excessive. *Stenson v. Blum*, 512 F.Supp. 680 (S.D.N.Y.), *aff'd without opinion*, 671 F.2d 493 (2d Cir. 1981); *Ross v. Saltmarsh*, 521 F.Supp. 753 (S.D.N.Y.1981); *Bradford v. Blum*, 507 F.Supp. 526 (S.D.N.Y.1981); *Becker v. Blum*, 487 F.Supp. 873 (S.D.N.Y.1980); *Cleary v. Blum*, 507 F.Supp. 514 (S.D.N.Y.1981); *Swift v. Blum*, 502 F.Supp. 1140 (S.D.N.Y.1980).

■ Although defendants argue that historical rates should be utilized in determining plaintiffs' attorney's fee, aside from the difficulty of calculating rates on an historical scale, the court believes that current, rather than historical, rates should be applied. As plaintiffs have waited eight years to receive any compensation, a calculation at present rates is appropriate to compensate them for inflation and loss of interest. *City of New York v. Darling-Delaware*, 440 F.Supp. 1132 (S.D.N.Y.1977); *Axinn & Sons Lumber Co. v. L.I.R.R.*, No. 75–C–280 (E.D. N.Y. July 27, 1981). *But see Desimone v. Industrial Bio-Test Laboratories, Inc.*, 83

F.R.D. 615, 621 (S.D.N.Y.1979); *Kane v. Martin Paint Stores, Inc.*, 439 F.Supp. 1054, 1055 (S.D.N.Y.1977), *aff'd without opinion*, 578 F.2d 1368 (2d Cir. 1978).

*Hours for which Compensation is Sought*

Counsel seek compensation for a total of 16,409.7 hours. The total broken down into each attorney's claim is as follows:

| Attorney | Hours Claimed | | | | Fee Application | Total |
|---|---|---|---|---|---|---|
| | Stage I | Stage II | Stage III | Stage IV | | |
| Bruce Ennis | 1098.15 | 1185.46 | 292.61 | 18.72 | ---- | 2594.94 |
| Christopher Hansen | 30 | 812.97 | 568.67 | 610.29 | 63.3 | 2085.23 |
| John Kirklin | 914.92 | 91.62 | 15.95 | 10.92 | 150.15 | 1183.56 |
| Robert Feldt | 530 | | | | | 530 |
| Kalman Finkel | 125 | | | | 10 | 135 |
| Anita Barrett | 2912 | 2276.96 | 905.76 | | 55 | 6149.72 |
| Douglas Leonard | | 700 | | | | 700 |
| Carol Kellerman | | | 116.77 | 491.48 | 3 | 611.25 |
| Law Students | | | | | | 2420 |
| | | | | Overall Total | | 16,409.7 |

Defendants' most serious objection to the present application is that plaintiffs' attorneys are claiming fees for excessive and duplicative hours that are inadequately documented. Christopher Hansen kept contemporaneous time records for the period October, 1978 to the present, and John Kirklin and Anita Barrett kept contemporaneous records for time spent on the fee application. The rest of the time has been reconstructed. Five of the attorneys have used a list of contemporaneous documents ("Greenbook") to help them more accurately approximate part of the time claimed. In addition, the eight lawyers and two law students have submitted affidavits summarizing hours expended and have answered interrogatories, each of the attorneys, except Robert Feldt, has been deposed, and Kirklin, Barrett, and Hansen have submitted supplemental affidavits expanding their deposition responses.

■ There is a wide range in the quality of the applications in terms of specificity, but all are wanting to a degree. The attorneys' reconstruction of time is based on present recollection of hours spent years before, in some instances as many as eight years ago. Although five attorneys used a list of documents to refresh their recollection, only one of the attorneys consistently reexamined the documents, and all estimated at least a portion of their time without reference to a supporting document list. While the use of reconstructed time records is permissible, the time must be reconstructed with reasonable specificity and must exhibit reasonable reliability. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973); *Grinnell*, 560 F.2d at 1103. Uncertainties that arise because of poor records should be resolved against the applicant. *See, e.g., Ross*, 521 F.Supp. at 761–62; *Kane v. Martin Paint Stores, Inc.*, 439 F.Supp. at 1057; *Blank v. Talley Industries, Inc.*, 390 F.Supp. 1, 4 (S.D.N.Y.1975).

The fact that § 1988 was not yet law during the time that most of the services were rendered does not entirely excuse counsel's record keeping. Pre-*Alyeska* common law doctrine allowed fees, *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Newman v. Alabama*, 349 F.Supp. 278 (M.D.Ala.1972), *aff'd in part*, 503 F.2d 1320 (5th Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102 (1975), *vacated and remanded for consideration* in light of *Alyeska Pipeline Service Co. v. Wilderness Society*, 522 F.2d 71 (5th Cir. 1975). It is clear from the documents listed in the Greenbook that plaintiffs contemplated applying for fees at least as early as November, 1974. Of course, failure to keep better records after March, 1978, when the court decided that plaintiffs were entitled to fees, is even more inexcusable.

Lack of documentation is not an evil in itself, but it creates problems precisely to the extent that it makes the court's task of determining the reasonableness of time claimed very difficult. The court's personal familiarity with the proceedings from May, 1976 on somewhat mitigates the problems of inadequate documentation. From experience with this case and others, as well as a review of the submitted papers, the docket sheet and the case files, the court believes that counsel have generally attempted to be conservative in their reconstruction of hours even though they may be inaccurate. Defendants, however, have identified several examples of claims that give rise to the suspicion that excessiveness and duplication have not been entirely avoided.

In cases involving multiple attorneys or a large number of claimed hours, an across-the-board reduction is a necessary but fair expedient to correct for excessive or duplicative hours. *Northcross v. Board of Education of the Memphis City Schools*, 611 F.2d 624, 636–37 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); *Ross*, 521 F.Supp. at 762; *Kane v. Martin Paint Stores, Inc.*, 439

F.Supp. at 1057; *Fischer v. International Tel. and Tel. Corp.*, 78 F.R.D. 237, 248 (E.D. N.Y.1978). Due to the great disparity in quality among the applications the court has scrutinized each to determine what, if any, across-the-board reduction or other disallowance to make in that attorney's fee request based on the quality of his affidavit and deposition testimony and the reasonableness of hours claimed.

Bruce Ennis claims 1421.94 hours based on the Greenbook and 1173 non-document-related hours. His reconstruction is the most exact and conservative of the attorneys. He reviewed the docket sheet and the documents in the Greenbook in reconstructing his hours, and his deposition testimony credibly details most of his activities. While the court believes that Ennis conservatively estimated his hours, he did not avoid all of the pitfalls of reconstruction. Despite his review of the documents in the Greenbook, he listed several duplicate entries as separately billable items. Moreover, he did not adequately detail certain tasks unsupported by the Greenbook, in particular 150 hours of court time, 96 hours of witness preparation and 100 hours of preparation of the post-trial memorandum. Accordingly, the court has reduced his time by 5%.

Christopher Hansen's submission includes a contemporaneous time record from October, 1978 to March, 1981. The claims therein are specific and reasonable, although the hours spent on preparation of the attorney's fee application are a bit high in light of the application's weaknesses.[8] Hansen additionally claims 1191 hours supported by documents in the Greenbook and 551 hours spent on other tasks. For the most part his reconstruction reflects a reasonable estimate of his hours. Nevertheless, the basis for his calculation of his in-court time is haphazard; he billed twice for several duplicate Greenbook entries and his undocumented claims lack specificity. The court finds that a discount of 8% of his time is a reasonable approximation of his hours.

---

**8.** Hansen, as well as Kirklin and Barrett, also claims hours for time spent on the fee application after it was filed. These claims are handled separately, *infra*, under the section entitled "Other Objections."

John Kirklin claims 886.4 document-related hours supported by the Greenbook, 147 non-document-related hours detailed in his affidavits and deposition testimony and 150.15 hours for work on the fee application. While for the most part his reconstruction appears to be reasonable, his claim of 250 hours to prepare the complaint is excessive. Moreover, his memory of the services he performed is often hazy, his undocumented claim of 110 hours for meetings with other lawyers appears to overlap his document-related claims, and several of his claims are for double-entry items. The court finds that a 10% discount will compensate for duplicative and excessive claims.

Carol Kellermann claims a total of 611.25 hours. Her reconstruction reflects an estimate based on the Greenbook, her memory of non-document-related tasks, and, from 1978 through 1980, on Hansen's contemporaneous time record and the docket sheet. Her submission has the weakness of inexactness common to all of the applications. For example, she claims 10 hours for work on a motion which she realized at her deposition did not properly belong with this application; and her questionable basis for a claim of 51 hours is:

> I was on vacation and I allotted a certain period of time every day when I was going to work on the C.A.B. brief, about 3 or 4 hours, so I probably figured how many hours a day I was out at Fire Island and I knew how many hours a day I spent on the brief and multiplied and that's why it came out to an odd number like that.

After subtracting the 10 hours incorrectly claimed, the court finds an across-the-board reduction of 15% a reasonable approximation of Kellermann's total hours.

Anita Barrett claims 6149.72 hours. Her estimates generally exceed that of other attorneys for identical or similar tasks, and, on the whole, are a bit high. She also makes several duplicative claims. The court finds a reduction of 20% an appropriate corrective.

Robert Feldt claims 530 hours. He has submitted an affidavit and a supplemental statement, dated June 10, 1981. Unfortunately, his claim totally lacks specificity. He bases his claim on "my conservative estimate of the expenditure of seven hours per week of my time on the case between November 1971 and June 1973." He lists activities but fails to detail the amount of time he spent on them. He states that: he spent "a lot of time meeting with parents," he made about "two visits a week to Willowbrook," he called "most" of the experts, drafted "most" of the affidavits, and took "several" depositions. The court cannot be expected to estimate an attorney's time which is "almost entirely unsupported by daily records." *In re Hudson and Manhattan Railroad Co.*, 339 F.2d 114, 115 (2d Cir. 1964); *Grinnell*, 560 F.2d at 1103. Based on the case file and the few details Feldt provided, the court will allow 8 hours for the preparation and taking of the deposition of Dr. Miller, 8 hours for that of Dr. Hammond, 30 hours for the preliminary injunction hearing, and 25 hours for Willowbrook tours.

Douglas Leonard claims an even total of 700 hours. He bases his estimate on the Legal Aid Society's record of his cases, which shows he did not pick up any other cases from July to November, 1972 and on his present recollection that:

> when I was working on this during that summer, I was pretty much full-time duty on this case ... that's four months.... About seventeen weeks. Times forty. That's six hundred and eighty hours right there. Plus I spent other time after that up until March of the next year. So seven hundred to me sounds reasonable.

While his recollection for total hours may be accurate, his blanket claim makes the court's task of evaluating his time for efficiency and duplicativeness impossible. Based on the court docket and transcripts, the court finds 100 hours reasonable for trial preparation and attendance. In addition, the court allows 20 hours for his attendance at the four depositions he identified, 30 hours for tours of Willowbrook, and 10 hours for negotiation meetings.

Kalman Finkel claims 135 hours without reference to pleadings or other contemporaneous documents. The court finds reasonable a total of 40 hours: 30 hours for his review of the complaint and briefs and his attendance at the hearing on the preliminary injunction, 5 hours for the Willowbrook tour, 3 hours for preparation of the parent witness, and 2 hours for the fee application.

*Other Objections*

■ Defendants argue that a substantial number of hours at depositions and hearings should be disallowed because of overstaffing. We find the argument without merit. While the court has discretion to reduce hours because of overstaffing, *Steinberg v. Carey*, 470 F.Supp. at 478–79 & n.35, attendance by more than one counsel does not necessarily indicate duplication of effort. *Siegel v. Merrick*, 619 F.2d 160, 164 (2d Cir. 1980). A case of this magnitude and complexity often requires attendance at depositions, conferences and hearings by more than one attorney. *Ross*, 521 F.Supp. at 762. Moreover, multiple counsel for defendants usually attended hearings and conferences and vigorously opposed plaintiffs. Reduction is inappropriate where counsel are "confronted by a bevy of hostile counsel for multiple adversaries." *Siegel*, 619 F.2d 160. In any event, to the extent that duplication of effort occurred, the court finds the individual percentage reductions an adequate corrective.

■ The court also believes that counsel should be compensated for their hours doing background research. *Ross*, 521 F.Supp. at 762. Defendants contend that plaintiffs' attorneys are charging for background education that is "unconnected with legal issues presented in this case." They cite time spent reading documents on institutional conditions, cases that presented related issues and articles on mental retardation and community resources. We believe that defendants grossly distort the efforts and activities of plaintiffs' attorneys. Counsel's expertise in the specialized areas of retardation, habilitation of the retarded and institutional reform, their knowledge of state budgetary matters and their mastery of data concerning conditions at Willowbrook were crucial to their effective representation of plaintiffs. The court finds that their research was an integral part of the litigation, is properly compensable, and that the across-the-board reductions adjust for any excessiveness.

■ The court does agree with defendants, however, that the state should not be assessed fees for time spent on internecine squabbles among plaintiffs. The time spent on plaintiff NYSARC's dissatisfaction with counsel and its motion to reconstitute the Review Panel is disallowed:

| | Stage I | II | III | IV |
|---|---|---|---|---|
| Ennis | | .92 | 1.2 | |
| Hansen | | 2. | 12.72 | |
| Barrett | | 1.06 | 7.83 | |

In addition, in two instances Hansen and Kellermann claim time for a grouping of documents that includes documents relating to *NYSARC v. Board of Education of N.Y.C.*, No. 72–356/357 (E.D.N.Y. September 24, 1978), in which the New York City Board of Education, not New York State, was defendant. The court reduces each attorney's claim by .50 hours for the 9/8/78 claim and by 2 hours for the 9/14/78 claim.

■ The time spent by attorneys on necessary but routine clerical or administrative work of a non-legal nature, should be compensated but at a lower hourly rate. *Desimone*, 83 F.R.D. at 621; *Ross*, 521 F.Supp. at 762. Accordingly, counsel will be compensated at $50/hour for time spent on expense documents and other clerical tasks as follows:

| | Stage I | II | III |
|---|---|---|---|
| Ennis | 3 | 2 | 1 |
| Hansen | | 17 | 2 |
| Barrett | 1 | 8 | 1 |

■ Plaintiffs' counsel request compensation for services performed by two law students. The students have submitted affidavits and answers to interrogatories, representing a total of 2420 hours. In their blanket claims, based almost entirely on present recollection, the students break down their activities only in the most cursory manner. Under certain circumstances

342

compensation for law students might be appropriate. Legal research and writing done by the students might otherwise have to be performed by attorneys at a greater cost. *Mid-Hudson Legal Services*, 440 F.Supp. at 1136. *But see CTS Corp. v. Electro Materials Corp. of America*, 476 F.Supp. 144 (S.D.N.Y.1979). However, defendants should not be charged for all student activities, such as attendance at hearings, meetings, tours and interviews at which attorneys are also present. *EEOC v. Sage Realty*, 521 F.Supp. at 273. Because of the total inadequacy of the students' submission, the court is unable to determine which hours, if any, would be compensable. Accordingly, compensation for work performed by the law students is denied.

■ Finally, Hansen, Kirklin, and Barrett have submitted claims for an additional 169.59 hours for work on the fee application after it was filed. Defendants contend that the additional claim results from the inadequacy of plaintiffs' initial motion papers and plaintiffs' refusal to respond to interrogatories until so ordered by this court. We agree that defendants should not be penalized for the substantial number of hours expended by counsel as a result of the inadequacies of their application. Plaintiffs should, however, be compensated for a reasonable expenditure of time on discovery matters. Plaintiffs' claim is conservative. They seek compensation for the time of only three attorneys although all were involved in discovery. The court has adjusted the claim to disallow hours spent on interrogatories and supplemental affidavits necessitated by the sketchiness of the fee application. As adjusted, Hansen will be permitted 40 hours, Kirklin 50, and Barrett 15, discounted by the across-the-board reductions discussed *supra*.

The court's computation of the lodestar figure is summarized in the Appendix to this opinion, Table 1.

*Adjusting the Lodestar*

■ In appropriate cases the lodestar figure may be adjusted upward or downward in light of additional factors, including novelty of questions presented, risk and complexity of the litigation, nature of results achieved and quality of representation. We are cognizant that fees should be awarded with an eye to reasonableness. *Beazer*, 558 F.2d 97. The lodestar is presumptively enough compensation, *Population Services International v. Carey*, 476 F.Supp. 4 (S.D.N.Y.1979), and to a degree the factors of attorney's skill and complexity of issues are reflected in the hourly rate the court has rewarded. *Swift v. Blum*, 502 F.Supp. 1140. We are also mindful of the purpose of § 1988 to encourage litigation vindicating fundamental civil rights. The benchmark for § 1988 fee awards is that they "be governed by the same standards that prevail in other types of equally complex federal litigation." There is no doubt in our minds that were this private litigation, a bonus would be proper. Given the risk and complexity of the case, the results achieved and the superior advocacy of counsel, an upward adjustment to the lodestar is warranted.

An important consideration in favor of augmenting the lodestar is the ground breaking nature of the case. Prior right-to-treatment cases had established the right to treatment as the *quid pro quo* of involuntary commitment. *Rouse v. Cameron*, 373 F.2d 451 (D.D.C.1966); *Wyatt v. Stickney*, 325 F.Supp. 781 (M.D.Ala.1971). The preliminary injunction in *Willowbrook* established the important principle that institutionalized retarded persons—voluntarily as well as involuntarily committed—have a basic constitutional right to protection from harm and to the same human living conditions as are constitutionally accorded convicted prisoners. *NYSARC v. Rockefeller*, 357 F.Supp. at 764. The Consent Judgment that followed was also ground breaking precedent both in the comprehensive implementation procedure it devised, *see NYSARC v. Carey*, 596 F.2d 27 (2d Cir. 1979); *Note*, Implementation Problems in Institutional Reform Litigation, 91 Harv.L.Rev. 428, 440-48 (1977), and in its underlying principle that "retarded persons regardless of the degree of handicapping conditions, are capable of physical, intellectual, emo-

tional and social growth, and ... that a certain level of affirmative intervention and programming is necessary if that capacity for growth is to be preserved, and regression prevented." 393 F.Supp. at 718; Consent Judgment at 3. A related consideration is the contingency of recovery. *EEOC v. Sage Realty Corp.*, 521 F.Supp. at 274. The New York Civil Liberties Union and Legal Aid Society committed substantial time and resources when, at least up to the signing of the Consent Judgment, the prospects of success were speculative.

We move to the nature of the results achieved and the quality of counsel's advocacy. Plaintiffs' counsel obtained virtually all the relief they sought. The Consent Judgment incorporated twenty-three "Steps, Standards and Procedures" which mandated minimum levels of physical conditions, programming and services, individual treatment plans and a schedule of deinstitutionalization and community placement. Since then the efforts of plaintiffs' counsel, in conjunction with the Review Panel while it was still functioning, have been indispensable in securing the degree of compliance with the Consent Judgment that has been achieved. Without the ongoing involvement of counsel in the implementation process, an unusual occurrence in class action cases, it is doubtful that many of the Consent Judgment agreements would have become realities.

The quality of representation has been uniformly high. In his opinion approving the Consent Judgment, Judge Judd observed:

> Counsel for plaintiffs have demonstrated skill and a great capacity for work in assembling facts concerning every aspect of conditions at Willowbrook, evaluating the results of this court's preliminary injunction of April 10, 1973, and providing testimony as to the needs of Willowbrook residents and the methods and programs employed in institutions elsewhere in the United States.

393 F.Supp. at 716. Throughout the implementation process counsel have continued to provide plaintiffs with outstanding representation. Their preparation has been painstaking, and their familiarity with the specialized knowledge that is required in this litigation has been extraordinary.

Balancing all of the above factors and mindful of the Second Circuit's admonition to avoid "windfall fees," *Beazer*, 558 F.2d at 101, the court awards counsel a 50% increment to the lodestar through the signing of the Consent Judgment. Thereafter, since the factors of contingency of recovery and legal novelty of issues do not apply with equal force, the court approves the lesser multiplier of 25%.

### The Fee Application

Factors that justify an adjustment to the lodestar apply only to the main litigation on behalf of counsel's clients. *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1219 (3d Cir. 1978); *Desimone*, 83 F.R.D. 618. Plaintiffs do not seek the application of the multiplier for work done on the fee application. They do, however, request application of the multiplier for services performed prior to 1980, as documented by the Greenbook, some of which were fee-related. The multiplier should not apply to any fee-related services, and the plaintiffs' fee request must be modified accordingly. The total fee with the multiplier applied is contained in the Appendix, Table II.

### Costs

Plaintiffs request reimbursement of costs and expenses in the amount of $21,035.48. Reasonable costs and expenses are recoverable under 42 U.S.C. § 1988 and 28 U.S.C. § 1920. *Northcross*, 611 F.2d at 630–40; *Population Services v. Carey*, 476 F.Supp. at 8; *Bradford v. Blum*, 507 F.Supp. at 535–6 n.22. The court finds the itemized expenses reasonable in view of the exhaustive efforts expended in the litigation of this case. In their "Answers to Defendants' First Set of Interrogatories," however, plaintiffs for NYCLU acknowledge contributions of $4200 in connection with this case for out-of-pocket expenses. Accordingly, the court reduces the total by

$4200, allowing expenses and costs of $16,-835.48.

## CONCLUSION

In accordance with the foregoing, the court concludes that the applicants are entitled to (1) $1,389,915.91 for attorney's fees, and (2) $16,835.48 for costs and disbursements, which result in an award of $1,406,-751.39. 42 U.S.C. § 1988; 28 U.S.C. § 1920; Fed.R.Civ.P. 54(d).

SO ORDERED.

## APPENDIX

### TABLE I – LODESTAR FIGURE BY ATTORNEY

| Attorney | Hours Claimed | | Hours Approved | | | Hourly Rate | % Reduction | Fee Award |
|---|---|---|---|---|---|---|---|---|
| Ennis | I. | 1098.15 | I. | 1094.93 | x | $110 | 5% | |
| | | | | | | 50 | | |
| | II. | 1185.46 | II. | 1178.782 | x | 120 | | |
| | | | | | x | 50 | | |
| | III. | 292.61 | III. | 277.551 | x | 135 | | |
| | | | | | x | 50 | | |
| | IV. | 18.72 | IV. | 4.72 | x | 140 | | |
| | * F.A. (i) | -- | ** F.A. (i) | 30.82 | x | 140 | | |
| | | | | | | | | $289,405.57 |
| Hansen | I. | 30 | I. | 30 | x | 70 | 8% | |
| | II. | 812.97 | II. | 782.31 | x | 75 | | |
| | | | | 17 | x | 50 | | |
| | III. | 568.67 | III. | 532.43 | x | 85 | | |
| | | | | 2 | x | 50 | | |
| | IV. | 610.29 | IV. | 515.13 | x | 100 | | |
| | F.A. (i) | -- | F.A. (i) | 92.66 | x | 100 | | |
| | F.A. (ii) | 63.3 | F.A. (ii) | 40 | x | 100 | | |
| | | | | | | | | 158,018.09 |
| Kirklin | I. | 914.92 | I. | 914.92 | x | 75 | 10% | |
| | II. | 91.61 | II. | 89.61 | x | 85 | | |
| | III. | 15.95 | III. | 3.95 | x | 105 | | |
| | IV. | 10.92 | IV. | 9.58 | x | 115 | | |
| | F.A. (i) | 69.66 | F.A. (i) | 82.5 | x | 115 | | |
| | F.A. (ii) | 80.99 | F.A. (ii) | 50 | x | 115 | | |
| | | | | | | | | 83,663.82 |
| Feldt | I. | 530 | I. | 71 | x | $120 | --- | $ 8,520.00 |
| Finkel | I. | 125 | I. | 38 | x | 120 | -- | |
| | F.A. (i) | 10 | F.A. (i) | 2 | x | 140 | | |
| | | | | | | | | 4,840.00 |
| Barrett | I. | 2912 | I. | 2910.75 | x | 70 | 20% | |
| | | | | 1 | x | 50 | | |
| | II. | 2276.96 | II. | 2263.15 | x | 80 | | |
| | | | | 8 | x | 50 | | |
| | III. | 905.76 | III. | 888.51 | x | 95 | | |
| | | | | 1 | x | 50 | | |
| | F.A. (i) | 30 | F.A. (i) | 43.17 | x | 110 | | |
| | F.A. (ii) | 25 | F.A. (ii) | 15 | x | 110 | | |
| | | | | | | | | 380,889.32 |
| Leonard | II. | 700 | II. | 160 | x | 75 | --- | 12,000.00 |
| Kellerman | III. | 116 | III. | 106.77 | x | 80 | 15% | |
| | IV. | 491.48 | IV. | 488.9 | x | 80 | | |
| | F.A. (i) | 3 | F.A. (i) | 3.08 | x | 80 | | |
| | | | | | | | | 40,715.00 |
| | | | | | | | TOTAL LODESTAR | $978,051.80 |

* This category reflects hours spent on the fee application up to the filing of plaintiffs' motion requesting attorney's fees. The time claimed for work on the fee application after the motion was filed is designated F.A. (ii).

** The court has placed those hours plaintiffs attribute to stage I, II, III or IV that reflect time spent on the fee application in the category fee application (F.A. (i)).