OPINION OF THE COURT
Arthur M. Diamond, J.
The petitioner, Peter Smergut, Executive Director of Life’s WORC moves by order to show cause pursuant to article 81 of the Mental Hygiene Law for the appointment of a special guardian on behalf of LD, an alleged incapacitated person, to serve as property manager on her behalf. The powers requested for the special guardian are specific: to transfer certain Social Security disability payments that have been awarded to LD retroactively into Life’s WORC’s community trust for the benefit of LD. The application was opposed by the New York State Attorney General’s office on behalf of the New York State Office for People with Developmental Disabilities (OPWDD) and the New York Civil Liberties Union. The State also filed a cross petition to have the funds placed in a different state approved trust which the petitioner opposes.
The issue presented here is whether the proposed transfer of the alleged incapacitated person’s (hereinafter referred to as AIP) funds into a pooled trust operated by her residential service provider violates sections 81.19 (e) and 81.20 (a) of the Mental Hygiene Law because it creates a conflict of interest and *877 therefore is not in the best interests of the AIR A hearing was held on December 8, 2010 and the following is the court’s decision.
Facts
LD is 46 years old, having been born July 23, 1964. She is totally disabled, having been diagnosed with profound mental retardation, spastic quadriplegia, hypothyroidism and scoliosis. She cannot speak or walk and cannot perform any activities of daily living on her own. She has no health care proxy, living will, or power of attorney. She resides at Life’s WORC, 366 Ocean Avenue, Massapequa, New York where she is provided with 24-hour care. LD has lived there for more than 18 years. Her assets are her monthly Social Security benefit of $816 and monthly supplemental Social Security benefits of $202.10. Her personal needs allowance is $170. In 2010, an employee of Life’s WORC discovered that LD was entitled to previously owed Social Security disability payments in the amount of $102,000. Life’s WORC seeks to place those funds into its own “pooled trust” to be used for the benefit of LD.
Opposition by New York State Office for People with Developmental Disabilities
In its opposition, the Attorney General, on behalf of the New York State Office for People with Developmental Disabilities, alleges many reasons for opposing the application. The first is that because Life’s WORC is her provider of residential services it alleges a “statutory concern” that LD’s property rights be fully protected pursuant to Mental Hygiene Law § 13.07 (c) and this transfer may affect those rights. First, it argues that to grant the application would be a per se violation of Mental Hygiene Law § 81.19 (e) (2) because the community trust was created and is controlled by the very provider of LD’s residential services. Mental Hygiene Law § 81.19 (e) (2) states, in sum, that unless the court finds that there is no other guardian available, one who provides residential services to the incapacitated person should not serve as guardian. Next it argues that the trust would violate Mental Hygiene Law § 81.19 (e) (1) because the community trust is a potential creditor of LD. Specifically the Attorney General relies on the trust agreement at page 13, which states that the trustee is “authorized to reimburse Life’s WORC . . . for costs and services provided to the AIR” OPWDD cites the Third Department case of Matter of Patrick BB. (284 *878 AD2d 636 [2001]) in support of its proposition. OPWDD also argues that the prohibition extends to the appointment of special guardians as well, which is the application here. OPWDD also is critical of the proposed community trust agreement itself. Specifically, it refers to section 10 of that agreement, titled “Waiver of Potential Conflict of Interest,” which clearly states that the trustees of the trust “may make disbursements directly to Life’s WORC or its agents to cover the costs of services and benefits that may be provided by the organization or its constituent agencies.” Next, OPWDD claims that there is a distinct lack of accountability by the trustees, whose actions are discretionary and binding upon all parties. Finally, OPWDD is critical of the indemnification protection that states the trust will indemnify the trustee against any claims unless the trustee is found guilty of willful misconduct. OPWDD argues that a payback trustee carries with it none of these potential conflicts of interest. The payback trustee does not retain the AIP’s funds upon their death and therefore has no disincentive to spend the money on the AIP’s behalf. Next, the payback trustee is appointed by the court and must account to the court annually on the disbursements or lack thereof of the funds. Finally, if the community trust requests that the payback trustee make a disbursement to Life’s WORC for services or benefits made on behalf of the All] that trustee has the discretion without interest or bias to grant or deny that request. Another concern is based upon Mental Hygiene Law § 81.08 (a) (8) and OPWDD’s status as the local Medicaid district provider of such funds to LD. It asks the court to consider that should there be a remainder of the trust after LD’s death, it is appropriate that Medicaid should be the recipient of that remainder, having paid millions of dollars on her behalf during her disability. It recommends that the court choose what is known as a Morales trust (citing Matter of Morales, NYLJ, July 28, 1995, at 25, col 1 [Sup Ct, Kings County, Leone, J.]) in view of the fact that the AIP is a Willowbrook class member. OPWDD also objects to the form of the trust agreement, which was submitted into evidence and states that it is not eligible to be classified as an exempt trust because it does not identify a cotrustee that is a trust company pursuant to the Social Services Law. Therefore, it would place her funds in jeopardy of being found Medicaid eligible.
Opposition by Consumer Advisory Board
The court next considers the cross petition brought by Antonia Ferguson, Executive Director of the Consumer Advisory *879 Board, hereinafter referred to as CAB. She explains that the CAB is an independent court appointed entity established pursuant to sections S and W, appendix A, of the final judgment entered on May 5, 1975 in the proceedings now captioned New York State Assn. for Retarded Children, Inc. v Carey (393 F Supp 715 [ED NY 1975] [Willowbrook order establishing CAB]). In view of the fact that LD is a member of what is known as the Willowbrook class, Ms. Ferguson is authorized under Mental Hygiene Law § 81.06 to request a guardian for LD upon knowledge that a class member has become eligible to have her property placed into a Medicaid exception trust. According to Ms. Ferguson, it is the mandate of the CAB to represent and advocate for class members who lack the ability to represent themselves. Here CAB stands as corepresentative along with LD’s sister. Life’s WORC has cared for LD for over 20 years. The residence, located in Massapequa, New York falls under the jurisdiction of the Long Island Developmental Disability Services Office which itself is under the auspices of the New York State Office for People with Developmental Disabilities.
Ms. Ferguson states in her petition that she is in agreement with the petition of Mr. Smergut to the extent that it requests that the lump sum of retroactive Social Security benefits should be placed into an exception trust for LD’s benefit. However, she disagrees with the choice of the Life’s WORC community trust for that purpose. The CAB raises the same objections to the petition as OPWDD focusing on the conflict of interest and the “divided loyalty” of the residential provider to itself as remainderman and the AIR
Opposition by New York Civil Liberties Union
The New York Civil Liberties Union (NYCLU) both submitted papers and with the permission of this court appeared at the hearing on the petition and cross petition. It opposes the application of Life’s WORC and recommends that the exception trust be in one of three forms: a supplemental needs trust (SNT) or an SNT that would direct the trustee to consult with LD’s corepresentatives and CAB as to the best use of her funds; or a pooled trust in which the trustee is a neutral fiduciary and not a person who provides services or is a creditor of the AIR While agreeing in principle with OPWDD’s objections as stated above, NYCLU also points out that New York State and NYCLU have had prior disputes in prior guardianship proceedings regarding what is the most appropriate exception trust when a class *880 member is involved. Those differences were resolved before the Honorable Raymond J. Dearie in a stipulation entered into June 21, 2007. In that agreement, which all parties here recognize is not binding upon this court, it was agreed that the parties would utilize either an SNT or a pooled Medicaid exception trust. Further, the stipulation states that where the benefit is greater than $50,000 the trust must be an individual payback SNT which calls for consultation with CAB as to how best to utilize the trust funds for the beneficiary. Therefore, the NYCLU requests that LD’s funds be placed either into an SNT or pooled trust that is administered by a “neutral and disinterested fiduciary” in order to comply with section 81.19 (e) (1) and (2). Petitioner states that it is a private, 501 (c) (3) not-for-profit agency which was established in 1971. Life’s WORC opened its first group home in 1977 housing eight individuals who had been living at Willowbrook State School. LD has been a resident for the past 18 years.
Petitioner’s Response
OPWDD claims that placing LD’s funds in petitioner’s community trust would be a violation of Mental Hygiene Law § 81.19 (e) (1) and (2) because the trust is controlled by the provider of residential services to the AIP and because the trust would be a potential creditor of the AIP Petitioner states that both of these claims are false because the paragraphs of Mental Hygiene Law § 81.19 cited by OPWDD only speak to potential guardians of person or property and not to the appointment of a trustee. The petitioner points to Mental Hygiene Law § 81.25 as specifically addressing the requirements of filing of a bond by a guardian, special guardian and trustee pursuant to this section. Acknowledging that treatment, petitioner argues that if the Legislature had intended to apply the Mental Hygiene Law § 81.19 (e) (2) restrictions to trustees it would have done so and it clearly did not.
The petitioner also distinguishes Matter of Patrick BB. (284 AD2d 636 [2001]) arguing that it does not stand for the proposition that the State claims it does, specifically that a provider of services is prohibited from being appointed the trustee in such a case as this. In this case, the petitioner argues, there was no finding that “no other person or corporation is available ... to act as guardian” (Mental Hygiene Law § 81.19 [e]), and therefore the appointment of the State as special guardian was disallowed.
*881 As to their alleged conflict of interest, petitioner argues that it is New York State that has the conflict because as the local Medicaid district it has an incentive to recover the value of services provided to the recipient and therefore it is the State who should be prohibited from choosing a payback trust as the recipient of the AIP’s asset.
Petitioner also argues against the rationale for applying the Willowbrook stipulation to this case. As stated before, all parties agree that this court is not bound by the stipulation. In fact, the petitioner argues that article 81 itself specifically calls for a case-by-case analysis and a determination of what is in the AIP’s best interests in appointing guardians for the management of their property and that to make a determination here based solely upon Willowbrook would run counter to the legislative policy contained in article 81. Petitioner also argues that the State is itself violating the stipulation because in that stipulation the State agreed not to seek to influence the courts as to which type of Medicaid exception trust best serves the interest of each class member.
Discussion
The court will first address what the State argues is a “per se” violation of Mental Hygiene Law § 81.19 (e) (2) in that the community trust proposed is the AIP’s provider of services. Under the facts herein, the court finds that the statute does not apply because the service provider is not seeking to be the guardian of the AIP; her sister requests to be appointed special guardian. The fact that the appointment is for a special guardian with limited powers as opposed to a guardian of the property is not meaningful here. The Attorney General’s reliance on Mental Hygiene Law § 81.19 (e) (1) is likewise misplaced because the court is not appointing anyone who has an interest in the AIP as a creditor. Her sister is seeking the appointment of special guardian, and there is no testimony that she has any financial interest as a creditor of her sister, the AIP
In reality the State is arguing that if the court appoints the sister as special guardian, and the special guardian transfers the Social Security disability payment to Life’s WORC community trust, the AIP’s property interest may not be properly protected because as her service provider, Life’s WORC has an inherent conflict of interest between spending the money on the AIP or saving it so the remainder will pass to its own trust. This is very similar to the argument that was raised in Matter *882 of Application of Robert Cannatella (index No. 8353/10) before the Honorable Martha L. Luft, Supreme Court, Suffolk County. In that case the incapacitated person (IP) was the recipient of $140,000 of retroactive Social Security disability benefits and the petitioner sought permission to deposit the funds into a Medicaid exception pooled trust with the Nassau County AHRC Community Trust II. The New York State Attorney General, as counsel for OPWDD, opposed the application and proposed that the funds should rather be deposited in a payback supplemental needs trust. As here, the basis for the State’s objection was that there was a potential conflict of interest between AHRC and the IE Additionally, they argued that the state Medicaid program and/or the estate of the IP is the appropriate recipient of these funds.
In her decision, Justice Luft noted that there is no preference in Social Services Law § 366 (2) (b) (2) (iii) for either type of trust and stated that
“the purported conflict identified by the state would exist in any case in which there is a choice to be made between a pooled trust and a payback trust. Nothing unique to the instant matter suggests that the potential for conflict perceived in this matter is different than would exist in any other matter in which an election is made to use a pooled trust rather than a payback trust. Absent any showing of special circumstances, the Court declines to impose a gloss upon the existing statutory plan that would, as a matter of course, require the employment of a payback trust over a pooled trust whenever both options are available and no other special factors dictate a preference for the use of one over the other.” (Matter of Application of Robert Cannatella, Sup Ct, Suffolk County, Martha L. Luft, J., index No. 8353/10.)
The State quite properly addressed the issue of section 10 of the trust agreement, which is entitled “Waiver of Conflict of Interest.” In that section, the trust agreement points out that the trust reserves the right to “make disbursements directly to Life’s WORC or its agents to cover the costs of services and benefits that may be provided by the organization or its constituent agencies.” In response to this, petitioner called as a witness Paulette Elbers, Director of Entitlements at Life’s WORC. She testified that Life’s WORC has never sought reimbursement from its trust for services that it has rendered *883 to one of its residents and would not do so in this case. The Attorney General also countered that a trustee has no accountability to anyone once the money is placed in the trust, which is yet another argument why a pooled trust is a poor choice for the AIR The court has two responses to this position. The first is that there is no statutory prohibition for the use of a pooled trust under these circumstances and so one must assume that the Legislature saw fit to allow the use of same. The second is that an appointment of a guardian who reviews the trust’s annual expenditures on behalf of the AIR and reports same to the court does give the court a degree of accountability over the trust because the court will review the activity of the trust on the AIP’s behalf.
The Attorney General cites the case of Matter of Patrick BB. (supra). In this case, the respondent was a 65-year-old developmentally disabled man who resided in a family care home and received case management services from the petitioner, the predecessor to OPWDD. After he inherited $19,041, the petitioner sought an order pursuant to Mental Hygiene Law article 81 appointing a property manager guardian and requiring that the guardian turn the proceeds of his inheritance over to the State for its claim of incorrectly paid Medicaid benefits. The attorney for the IR Mental Hygiene Legal Service, opposed and cross-moved for an order establishing a supplemental needs trust to be funded with the inheritance. As part of the petition, Supreme Court appointed the court evaluator as respondent’s special guardian. He was subsequently disqualified and the court then appointed the Commissioner as trustee of respondent’s inheritance, to be “administered as [an] SNT for the benefit of respondent.” Among others, the appellate court addressed the issue of whether petitioner was authorized to act as guardian of respondent’s personal funds under Mental Hygiene Law article 81. It then held that the lower court had not made a finding, required by section 81.19 (e) (1) where the petitioner is a creditor, that there was “no other person or corporation [available] to act as guardian” (Mental Hygiene Law § 81.19 [e]).
On its face, the court does not find Patrick BB. to be persuasive under the facts of this petition. LD’s sister is not only a person who is not a creditor who is willing to serve as guardian but is also a family member who testified at the hearing that she is willing to serve as special guardian pursuant to the petition.
*884 Conclusion
Based upon the moving papers, the submissions of counsel and the testimony at the hearing held December 8, 2010, it is the ruling of the court that there is nothing in the Mental Hygiene Law, the Social Services Law or the EPTL that prevents a properly appointed independent guardian from transferring funds into a trust controlled by the provider of services to the AIE While arguments of potential conflict of interest can be made in these situations, absent some proof that Life’s WORC has taken any action in the past that has not been in LD’s best interest, the court cannot presume that they would take any such action in the future that would not be in her best interest. The use of pooled trusts and so called “payback” trusts have been in existence since article 81 of the Mental Hygiene Law was created and the Legislature has taken no action to limit their use in these circumstances. As Justice Luft pointed out in her decision, the Legislature has not expressed preference for either form. This court will not, on its own, impose any such limitation. Furthermore, the court is satisfied that the appointment of Ms. Maryann Matera as the guardian of LD will address most if not all of the concerns expressed by the opposition. However, the court chooses to appoint Ms. Matera as guardian of the property, instead of special guardian, in order for the trustee to be accountable to the court indefinitely and for the court to maintain supervision of the trust established in behalf of the AIE As the guardian of the property, she will be responsible for filing annual accounts with the court including the activity of the trust. That is, she will advise the court on an annual basis of the expenditures made by the trust on behalf of her sister, the requests she or others make of the trust on behalf of her sister and the trust responses thereto, the costs associated with the administration of the trust, etc. This annual reporting will provide the court with sufficient information concerning the trust and LD.
Accordingly, viewing the record in its entirety and this hearing having been conducted pursuant to article 81 of the Mental Hygiene Law, and this court having heard the proof and reviewed the petition and supporting papers together with the report and testimony of the court evaluator, the court hereby finds by clear and convincing evidence that LD is an incapacitated person as defined under section 81.02 of the Mental Hygiene Law in that she is not able to provide for her own property management.
*885 Therefore, it is the decision of the court that a guardian of the property shall be appointed and, based upon the evidence produced and the recommendation of the court evaluator, it is my determination that the most appropriate and suitable individual to serve in such capacity is Maryann Matera.
The order and judgment to be submitted herein shall provide for the guardian to have all those powers requested in the moving papers as authorized under section 81.21 of the Mental Hygiene Law, and to make any and all decisions consistent with the functional limitations of LD, and which decisions are obviously in her best interest and welfare.
With respect to the specific powers to be granted, in addition to the standard ones, the guardian shall be authorized to:
(1) Exercise those powers specifically enumerated in paragraph 8 of the verified petition.
(2) Advise the court on an annual basis of the expenditures made by the Life’s WORC, Inc. community trust on behalf of her sister, the requests she or others make of the trust on behalf of her sister and the trust response thereto, and the costs associated with the administration of the trust, etc.
(3) If the guardian deems it appropriate, in addition to establishing a luxury account in the maximum amount allowed by the Nassau County Department of Social Services, she shall also be authorized to use the guardianship funds for the purpose of establishing an “irrevocable funeral trust” with a reputable funeral establishment in the State of New York, for future burial expenses.
The Life’s WORC, Inc. community trust shall provide any and all accounting and documentation requested by the guardian of the property as to the expenditures of the trust funds held on behalf of LD on an annual basis. The Executive Director shall file an affidavit with the court that it accepts the jurisdiction of this court as a condition for the approval of the trust on behalf of the IE The trustee shall post a bond with the court in the amount of $102,000 to secure the retroactive Social Security payments held in Life’s WORC, Inc.’s escrow account, and for the Social Security monthly payment of $1,018.10.
The appointment of the guardian of the property herein shall be for an indefinite duration upon the filing of a designation. The filing of a bond by the guardian is waived.
The guardian shall be required to visit with the IF not less than four times a year. The guardian shall complete a training *886 program in accordance with section 81.39 of the Mental Hygiene Law as soon as one is made available in Nassau County or in an adjoining county.
In addition to the foregoing findings, the order and judgment shall also provide for compensation to the guardian, which shall be fixed in the further orders of the court from time to time.
It shall also provide for compensation to be paid from the guardianship account to the petitioner’s attorney and to the court evaluator, both of whom shall be required to serve and file an affidavit of services prior to the entry of the order and judgment, as to any and all services performed in this article 81 proceeding, up to and through the issuance of the commission to the guardian.
Based on all of the foregoing, the petition is granted in accordance with this court’s findings, and petitioner shall submit the proposed order and judgment along with the actual trust document to the court for approval.